**NAGEOTTE, Appellee and Cross–Appellant,**

**v.**

**CAFARO COMPANY et al., Appellants and Cross–Appellees.**

[Cite as *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–04–015.

Decided April 29, 2005.

704

Margaret M. Murray and Victoria L. Earle, for appellee and cross-appellant.
James W. Hart, for appellants and cross-appellees.

SINGER, Presiding Judge.

{¶ 1} This appeal comes to us from a judgment issued by the Erie County Court of Common Pleas, following a jury verdict in a slip-and-fall case. Because we conclude that the trial court erred in denying motions for summary judgment and directed verdict in favor of appellants, we reverse.

{¶ 2} Appellee, Mary C. Nageotte,[1] filed suit, alleging that she sustained injuries from a fall caused by a pothole in the parking lot on property owned by

---

1. Although appellee has also filed a cross-appeal, for ease in discussion, we will refer to Nageotte as "appellee" and the remaining parties as "appellants."

appellant SanMarco Company, leased by appellant, First National Supermarkets, Inc. ("First National"), d.b.a. Tops Market, and maintained by appellants, Cafaro Company ("Cafaro") and Cafaro Management Company ("Cafaro Management").[2] The incident took place in late February 2000, in Sandusky, Ohio. Nageotte claimed that appellants were negligent in failing to maintain the parking lot in a safe condition and to correct a readily discernible hazard. First National and SanMarco Company moved for summary judgment based on the "open and obvious" defense, pointing out that in deposition testimony, Nageotte acknowledged seeing the pothole prior to her fall and trying to avoid it. Cafaro Company moved for summary judgment on the basis that since it had no ownership interest in the property, it was not liable for any injuries to Nageotte.[3] The court denied both motions. At a jury trial held in December 2003, Nageotte testified about her observations of the parking lot, her fall, and her resulting broken left hip and wrist. She also testified about another fall six months later. Nageotte testified that, in the second fall, she broke her right hip when she fell backwards onto the sidewalk in downtown Sandusky after forgetting that she had stepped up on a step to see into the window of a store. Nageotte also presented other witnesses to testify as to her health, her statements after the fall, and her ability to function since both falls. Medical testimony was also presented regarding her injuries, treatment, and prognosis.

{¶ 3} The Cafaro director of operations and a Cafaro Management maintenance superintendent and workman testified about the routine inspections and repairs performed in maintaining the parking lot. The Cafaro employees agreed that as property managers for SanMarco, they were responsible for the maintenance of the Tops grocery store parking lot. A Tops grocery store employee testified generally about parking lot conditions.

{¶ 4} At the close of appellee's case-in-chief, appellants moved for a directed verdict, first on the basis that because no dimensions or description of the pothole had been given, Nageotte had failed to present sufficient evidence of any defect or breach of any duty. In the alternative, appellants asserted that because Nageotte saw the alleged pothole and tried to avoid it, the hazard was so open and obvious that no duty existed. The trial court denied the motion. In defense, appellants then offered an additional photograph of the Tops grocery store, which was admitted without objection.

---

**2.** Appellant filed her first complaint in June 2001 against Cafaro Company and First National Supermarkets, In., and then amended it twice. The first amendment, filed in February and May 2002, added SanMarco Company. Cafaro Management Company was added in the second amended complaint, filed in April 2003.

**3.** At the time the motions for summary judgment were filed, Cafaro Management Company was not yet a party and, thus, never actually filed a motion for summary judgment.

{¶ 5} The jury found in favor of Nageotte, allocating the following percentages of comparative negligence to the parties: five percent to Nageotte; 70 percent to Cafaro Company and Cafaro Management Company; and 25 percent to San Marco Company and Tops Grocery Store. The jury awarded Nageotte a total amount of $200,000 in compensatory damages. Appellants filed motions for judgment notwithstanding the verdict or for a new trial, which were denied. Appellee's motion for prejudgment interest was also denied.

{¶ 6} Appellants now appeal, arguing the following five assignments of error:

{¶ 7} "I. Appellants' First Assignment of Error

{¶ 8} "The trial court erred in denying defendants' motion for summary judgment.

{¶ 9} "II. Appellants' Second Assignment of Error

{¶ 10} "The trial court erred in denying appellants' motion for directed verdict.

{¶ 11} "III. Appellants' Third Assignment of Error

{¶ 12} "The trial court erred by giving an erroneous instruction regarding defendants' possible wanton misconduct, as it was neither alleged nor pled, there was no evidence to support the instruction and defendants were unduly prejudiced thus resulting in an adverse verdict.

{¶ 13} "IV. Appellants' Fourth Assignment of Error

{¶ 14} "The trial court erred in denying defendants' motion for new trial.

{¶ 15} "V. Appellants' Fifth Assignment of Error

{¶ 16} "The trial court erred in denying defendants' motion for judgment notwithstanding the verdict."

{¶ 17} Nageotte cross-appeals, arguing the following two cross-assignments of error:

{¶ 18} "Assignment of Error No. 1

{¶ 19} "The trial court erred in denying prejudgment interest to Mary C. Nageotte.

{¶ 20} "Assignment of Error No. 2

{¶ 21} "The trial court erred by failing to conduct an oral hearing on plaintiff-appellee/cross-appellant's motion for prejudgment interest."

{¶ 22} We will address appellants' first two assignment of error together. In the first assignment of error, appellants argue that the trial court erred in denying them summary judgment; appellants assert in their second assignment of error that the trial court erred in denying their motion for directed verdict.

{¶ 23} An appellate court's review of a trial court's grant of summary judgment is de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Civ.R. 56(C) provides that summary judgment can be granted only if (1) no genuine issue of material fact remains to be litigated, (2) viewing the evidence in a light most favorable to the nonmoving party, reasonable minds can reach but one conclusion and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to summary judgment as a matter of law. See, also, *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. Nevertheless, "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, syllabus.

{¶ 24} Civ.R. 50(A)(4) states that "[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. *Wagner v. Roche Laboratories* (1996), 77 Ohio St.3d 116, 119–120, 671 N.E.2d 252. When the party opposing the motion fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. A trial court's grant or denial of a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 257, 741 N.E.2d 155.

*SanMarco and First National: Owner or Occupier Liability*

{¶ 25} We will first address the motions for summary judgment and directed verdict filed by the property owner, SanMarco, and the occupier, First National. To establish actionable negligence, the plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769, citing *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707; *Di Gildo v. Caponi* (1969), 18 Ohio St.2d 125, 47 O.O.2d 282, 247 N.E.2d 732; and *Feldman v. Howard* (1967), 10 Ohio St.2d 189, 39 O.O.2d 228, 226 N.E.2d 564.

{¶ 26} Generally, an owner or occupier of business premises owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn invitees of latent or hidden dangers. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474; *Jackson v. Kings Island* (1979), 58 Ohio St.2d 357, 358, 12 O.O.3d 321, 390 N.E.2d 810. The owner or occupier is not, however, an insurer of a business invitee's safety. *Paschal,* supra, at 203–204, 18 OBR 267, 480 N.E.2d 474. Where a danger is open and obvious, a landowner or business owner owes no duty of care to individuals lawfully on the premises. *Armstrong v. Best Buy Co.,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5, citing *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus. The rationale underlying this doctrine is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." Id., citing *Paschal,* supra, and *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 644, 597 N.E.2d 504. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong,* supra, at ¶ 13.

{¶ 27} Consequently, where a condition is patent or obvious, the invitee is expected to protect herself, unless the condition is unreasonably hazardous. See *Armstrong,* supra, at ¶ 5. An unreasonably hazardous condition does not exist when people who are likely to encounter that condition may be expected to take good care of themselves without further precautions. *Baldauf v. Kent State Univ.* (1988), 49 Ohio App.3d 46, 49, 550 N.E.2d 517. See, also, *Backus v. Giant Eagle, Inc.* (1996), 115 Ohio App.3d 155, 684 N.E.2d 1273 (pedestrian has a duty to look where he may be walking to avoid known and very obvious cracks in blacktop).

{¶ 28} Whether a hazard is an open and obvious condition is a matter of law to be determined by the court and, therefore, a proper basis for summary judgment. See *Armstrong,* supra. See, also, *Brown v. Classic Ventures Food Div., Inc.,* 8th Dist. No. 84656, 2005-Ohio-112, 2005 WL 78122 (hazard is open and obvious where there is no visible obstruction or concealment of the curb by anything in the parking lot); *Pozniak v. Recknagel,* 9th Dist. No. 03CA008320, 2004-Ohio-1753, 2004 WL 735349, at ¶ 15 (sidewalk hole was open and obvious). Summary judgment is properly granted to owners/occupiers in the "typical open and obvious cases [that] concern known conditions that could have been avoided by individuals if they had taken proper precautionary measures, such as paying

attention to where they were walking." *Demock v. D.C. Entertainment & Catering, Inc.*, 6th Dist. No. WD–03–087, 2004-Ohio-2778, 2004 WL 1191105, ¶ 10; *Cole v. McCarthy Mgt., LLC,* 6th Dist. No. L–03–1020, 2003-Ohio-5181, 2003 WL 22233409, ¶ 11; *Sheppard v. KAP Realty* (Aug. 12, 1999), 10th Dist. No. 75860, 1999 WL 608797 (the open and obvious nature of the pothole relieved appellee of a duty to warn when appellant's preexisting knowledge of the pothole and its location negates any breach of duty on the part of appellee).

{¶ 29} The open-and-obvious doctrine is also consistent with Ohio's statutory comparative negligence principles (R.C. 2315.19). *Armstrong,* 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, at ¶ 12; *Anderson v. Ruoff* (1995), 100 Ohio App.3d 601, 604, 654 N.E.2d 449. The doctrine is merely determinative of the threshold issue, the landowner's duty. *Armstrong,* supra, at ¶ 13. The issue of comparative negligence is never reached if the landowner or business owner owes no duty, since, in the absence of a duty, there is no negligence to compare. Id. Thus, a court must carefully determine the threshold issues of the defendant's duty of care and a plaintiff's duty to protect herself from open and obvious hazards. Id.

{¶ 30} In this case, Nageotte's fall occurred at 3:00 p.m. on a sunny February day, with no snow or ice on the parking lot. Nageotte, a frequent customer at the Tops store, was aware that there were potholes in the parking lot. She had successfully negotiated the parking lot to leaving the store. Upon leaving the store, Nageotte ultimately acknowledged, she was not distracted by any traffic. Furthermore, nothing in the record shows that Nageotte used a significantly different path in returning to her car than the one she traversed when walking to the entrance of the store. Thus, nothing in the record indicates that the pothole was hidden or latent.

{¶ 31} More important, however, Nageotte directly acknowledged that the pothole was visible. In her complaint, she described the hole as a "readily discernible hazard." In deposition and at trial she stated that she saw the pothole before she fell. Upon seeing the hole, she mentally assessed it as a hazard that she should avoid and even attempted to guide her cart around the hole. Nageotte was, in fact, successful in steering the front wheels of the cart past the hole, but failed to avoid the hole with one back wheel, causing the cart to tip. Nothing in the record, including Nageotte's testimony, indicates that this was the only path open to her, that something kept her from seeing the hole in time to avoid it, or that she could not have simply stopped and repositioned her cart.

{¶ 32} Likewise nothing in the evidence suggests that the hole was so large and deep that it constituted an unreasonably hazardous condition that required a

warning. We disagree with and decline to apply Nageotte's suggestion that the mere use of a store's grocery cart should excuse the user from the duty to protect herself from hazards that are in plain view in a parking lot. Moreover, if, as Nageotte argues, the hole was large enough that it should have been seen and repaired, i.e., "readily discernible," then it logically follows that it was a hazard that she should have been able to see. Consequently, we conclude that reasonable minds would agree that the hole was open and obvious.

{¶ 33} Therefore, SanMarco and First National, as owner or occupier of the property, had no duty to protect Nageotte from the alleged pothole, an open and obvious hazard which she could be expected to take sufficient measures to avoid and protect herself against. Consequently, SanMarco and First National were not negligent as a matter of law, and the trial court erred in denying their motions for summary judgment. Since the evidence at trial did not create any further issues of fact regarding the visibility of the pothole, the denial of summary judgment was not harmless, and the trial court further erred in denying SanMarco's and First National's motions for directed verdict.

### Cafaro Company and Cafaro Management Company: Independent Contractor Liability

{¶ 34} Although never specifically stipulated to or acknowledged in deposition or through trial testimony, the status of Cafaro Company and Cafaro Management as independent contractors will be treated as undisputed for the purposes of this appeal. It was also undisputed that these two companies had undertaken a contractual obligation to maintain the Tops parking lot.

{¶ 35} An independent contractor owes a general duty of care towards a business invitee; that is, he must exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 645–646, 597 N.E.2d 504; *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265. Unlike the owner and occupier, an independent contractor "who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Simmers,* supra, at 646, 597 N.E.2d 504.

{¶ 36} The existence of a duty depends on the foreseeability of the injury. *Menifee,* 15 Ohio St.3d at 77, 15 OBR 179, 472 N.E.2d 707, citing *Ford Motor Co. v. Tomlinson* (C.A.6, 1956), 229 F.2d 873; *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 190 N.E. 924. The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to

result from the performance or nonperformance of an act. *Menifee,* supra, 15 Ohio St.3d at 77, 15 OBR 179, 472 N.E.2d 707, citing *Freeman v. United States* (C.A.6, 1975), 509 F.2d 626; *Thompson v. Ohio Fuel Gas Co.* (1967), 9 Ohio St.2d 116, 38 O.O.2d 294, 224 N.E.2d 131; *Mudrich v. Std. Oil Co.* (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859. Until specific conduct involving an unreasonable risk is demonstrated by the evidence presented, there is no issue to submit to the jury. See *Englehardt v. Philipps* (1939), 136 Ohio St. 73, 15 O.O. 581, 23 N.E.2d 829.

{¶ 37} The existence of a duty in a negligence action is a question of law determined by the trial court, which an appellate court reviews de novo. *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 523, 668 N.E.2d 889; *Mussivand,* supra, 45 Ohio St.3d at 318, 544 N.E.2d 265. The breach of a duty, however, is normally a question for the jury. *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 98, 543 N.E.2d 1188; *Smith v. Cincinnati Gas & Elec. Co.* (1991), 75 Ohio App.3d 567, 569, 600 N.E.2d 325. Nonetheless, even if a duty is established, a negligence claim requires proof that a breach of that duty occurred. *Menifee,* supra, 15 Ohio St.3d at 77, 15 OBR 179, 472 N.E.2d 707. In determining breach of duty in pothole cases, a trier of fact must consider whether the condition of the hole was itself sufficiently discernible to constitute an adequate warning of the danger. See *Blair v. Goff–Kirby Co.* (1976), 49 Ohio St.2d 5, 3 O.O.3d 4, 358 N.E.2d 634; *Paulin v. John R. Jurgensen Co.* (1982), 7 Ohio App.3d 273, 7 OBR 354, 455 N.E.2d 524.

{¶ 38} In this case, both Cafaro and Cafaro Management conceded in depositions that they owed a duty to patrons to maintain the parking lot in a reasonably safe condition. Since the "open and obvious" doctrine did not act as an automatic bar to a negligence action against Cafaro Company, an independent contractor, we agree with the trial court that material issues of fact remained as to the breach of its duty to maintain the parking lot. Therefore, summary judgment was properly denied as to the Cafaro Company.[4] We will now determine whether the trial court erred in denying Cafaro's and Cafaro Management's motion for directed verdict.

{¶ 39} A trial court will grant a motion for directed verdict if, "after construing the evidence most strongly in favor of the party against whom the motion is directed, * * * reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). The "reasonable minds" test mandated by Civ.R. 50(A)(4) requires the court to discern only whether there exists any evidence of substantial probative value that favors the position of the nonmoving party. Civ.R. 50(A)(4); *Ruta v.*

---

4. As we previously noted, Cafaro Management Company never moved for summary judgment.

*Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 69, 23 O.O.3d 115, 430 N.E.2d 935. When the party opposing the motion fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. *Hargrove v. Tanner* (1990), 66 Ohio App.3d 693, 695, 586 N.E.2d 141. The reviewing court presumes that all the evidence presented is true and gives the benefit of the doubt to all *reasonable* inferences drawn from the evidence presented. *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 206, 560 N.E.2d 165.

{¶ 40} A reasonable inference based in part upon another inference and in part upon additional facts is a parallel inference and "may be indulged in by a jury." *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph two of the syllabus. See, also, *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 28 OBR 77, 502 N.E.2d 204, syllabus. "Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences." *Donaldson v. N. Trading Co.* (1992), 82 Ohio App.3d 476, 481, 612 N.E.2d 754. Nevertheless, despite the limitation on the inference rule under Ohio law, a trier of fact still may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts. *State v. Cowans* (1999), 87 Ohio St.3d 68, 78, 717 N.E.2d 298; *Motorists Mut.*, supra, 28 Ohio St.3d at 16, 28 OBR 77, 502 N.E.2d 204; *Hurt*, supra, 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, at paragraph one of the syllabus.

{¶ 41} At trial, Cafaro and Cafaro Management employees again acknowledged that they had a duty to maintain the parking lot in a reasonably safe condition. To demonstrate a breach of that duty, Nageotte first needed to present evidence or evidence from which reasonable inferences could be drawn that the pothole that allegedly caused her fall constituted an unreasonably dangerous condition. She then needed to show that it was created due to some action or inaction by Cafaro and Cafaro Management and that they failed to perform timely proper repairs or failed to put necessary warnings or barricades around it. We will now examine the actual evidence presented by Nageotte.

{¶ 42} In this case, the only relevant evidence presented regarding the pothole itself is Nageotte's testimony. Although vaguely alluded to in Nageotte's pretrial deposition testimony, no photos, description, or estimate of the actual size or depth of the hole were presented at trial. No evidence was offered to show how large the pothole would have to be to cause a cart to tip.

{¶ 43} In addition, despite the lengthy testimony provided on how Cafaro Management patches holes and cracks, no expert evidence was ever presented that the repair methods implemented were actually unsafe, improper, or substandard within the industry. No evidence was presented that a repair to the specific pothole had been made and failed. Even presuming the jury believed Nageotte's testimony completely, the only relevant direct evidence presented regarding the condition of the parking lot was that a pothole of unknown dimensions existed in the parking lot.

{¶ 44} Despite Nageotte's claims, no direct evidence was presented that specifically showed that the pothole she encountered had existed for an unreasonable amount of time. No evidence was presented that, at the time around Nageotte's fall, anyone had reported the existence of the particular pothole or other potholes that Cafaro or Cafaro Management had failed to respond to and repair within a reasonable time.

{¶ 45} Instead, the testimony showed that although the crews looked for potholes daily, they could fix them only when the weather permitted, i.e., when the holes were not covered by ice or snow. No evidence was presented as to how quickly or slowly potholes developed or how often it would be reasonable to expect potholes to be fixed during the winter months. A Cafaro Management employee stated that the repair crews were able to effect repairs as late as December. One employee acknowledged that he did not recall any potholes being fixed since October or November. He also noted, however, that although winter weather could prevent immediate repairs, potholes were usually patched as soon as possible. Nothing was offered to rebut this evidence or show that potholes existed that could have been repaired and were not.

{¶ 46} As for general maintenance, the Cafaro director of operations said that parts of the lot were repaved on a yearly basis. The only evidence presented which attempted to show that the parking lot was *not* fixed in a timely manner was a grocery store employee who said he never saw any Cafaro crews out fixing potholes. He did not say that potholes were never repaired or that the parking lot was always covered with potholes. Therefore, it is unreasonable to infer from his testimony that potholes were never filled within a reasonable time.

{¶ 47} Several photos of the pavement area in front of the Tops store were also presented by Nageotte, taken by her husband on the day after the incident. Nageotte offered these as "evidence" that appellants had a wanton disregard for her safety, that the parking lot presented an unreasonably hazardous condition, and that appellants were negligent in failing to repair the potholes more quickly. The photos do not, however, depict the particular hole or lot area allegedly involved with Nageotte's fall. Rather, they show a different area in front of the

store and a different pothole located several feet away from the sidewalk, off to the side and away from the direct path in front of the ramp at the curb.

{¶ 48} Furthermore, the photos show an area in front of the store that appears to be mostly clear, with the exception of some cracking and one visible pothole located away from the ramp area. Nageotte testified that she did not walk in the area of the pothole shown in the photo. Even construing this evidence in favor of Nageotte, the only reasonable inference from the photos is that there was plenty of open pavement that she could have used to avoid any allegedly hazardous pothole. In our view, the photos admitted have little relevance to prove Nageotte's claims, since they do not provide any meaningful information about the area where she actually fell, the location of the pothole as it related to her path leaving the store, or any specific information as to the maintenance provided by Cafaro and Cafaro Management.

{¶ 49} Nageotte also presented testimony from a security worker that potholes did not always get fixed the same day that he reported them. This witness, who began working at the mall in November 2001, was not employed before, on the date of, or even shortly after the incident. He could not testify as to any past company employee duties, training, actions, or policies. Consequently, his testimony was not relevant to the policies or activities which occurred approximately 21 months before his employment.

{¶ 50} By believing Nageotte's testimony, the jury could have found that a hole of some unknown size existed and that the cart tipped when its back wheel ran over it. Our complete and thorough review of the record reveals that no evidence was presented, however, to demonstrate or from which to infer (1) the actual size of the pothole, (2) the length of time it existed, (3) that the pothole was an unreasonably dangerous condition that required warning signs or barricades, (4) that Cafaro or Cafaro Management knew of the pothole and delayed fixing it for an unreasonable time, (5) that Cafaro or Cafaro Management habitually failed to fix potholes or barricade hazardous conditions, or (6) that it was foreseeable that a shopper would be unable to avoid the potholes in the lot, that her cart would tip, and that she would sustain injuries because of the existence of any of the potholes.

{¶ 51} In other words, in order to find negligence in maintaining the parking lot, the jury would have had to infer the following, all based upon the only direct fact, that a hole of unknown dimensions existed. First, the jury would have had to infer that the hole was of a size large enough to constitute a dangerous condition, i.e., that it was foreseeable that someone encountering it might be injured. Then they would have to infer that Nageotte could not have avoided the hole. Next, based upon that inference, it would have to be inferred that the hole had been there long enough that Cafaro or Cafaro Management knew or should

have known of its existence. Another inference required is that because the hole existed, the independent contractors did not repair holes in a timely manner and used improper repair methods even when they did. Finally, the inference would have to be made that either the lack of or improper repair caused the particular pothole allegedly encountered by Nageotte. Since these inferences require multilevel stacking and none are supported by any additional relevant facts, we conclude that they are pure speculation or impermissible inferences upon inferences.

{¶ 52} Nageotte's argument is tantamount to one of strict liability: that the existence of a pothole, regardless of size or visibility, in a parking lot located in northwest Ohio in February should create absolute liability on any person who owns or has contracted to maintain the parking lot. Appellee simply failed to provide sufficient evidence to support a direct finding or reasonable inference that Cafaro or Cafaro Management breached the duty of ordinary care in maintaining the parking lot. Therefore, we conclude that the trial court erred in failing to grant Cafaro Company's and Cafaro Management Company's motion for directed verdict.

{¶ 53} Accordingly, appellants' first assignment of error is well taken as to SanMarco Company and First National, d.b.a. Tops, but is not well taken as to Cafaro Company and Cafaro Management Company. Appellants' second assignment of error is well taken as to all four appellants. Our disposition of appellants' first two assignments of error renders the remaining assignments of error moot as to both appellants and cross-appellees and appellee and cross-appellant.

{¶ 54} The judgment of the Erie County Court of Common Pleas is reversed and vacated.

Judgment reversed.

PETER M. HANDWORK and GEORGE M. GLASSER, JJ., concur.

GEORGE M. GLASSER, J., retired, of the Sixth Appellate District, sitting by assignment.