BROWN, Appellant,

v.

HELZBERG DIAMONDS et al., Appellees.

[Cite as *Brown v. Helzberg Diamonds,* 168 Ohio App.3d 438, 2006-Ohio-4297.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1268.

Decided Aug. 18, 2006.

Denise M. Demmitt, for appellant.

Kerry Randall–Lewis, for appellees.

---

PIETRYKOWSKI, Judge.

{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas that granted the summary-judgment motion of defendants-appellees, Helzberg Diamonds et al., and thereby dismissed the negligence action filed against them by plaintiff-appellant, Trent Brown. Brown's appeal now challenges that judgment through the following assignments of error:

{¶ 2} "1. The trial court committed reversible, prejudicial error when it held that plaintiff Trent Brown did not demonstrate a legal duty owed to him by defendant Helzberg Diamonds.

{¶ 3} "2. The trial court committed reversible, prejudicial error when it failed to find that defendant Helzberg Diamonds breached its duty of reasonable care owed to its business invitee, plaintiff Trent Brown.

{¶ 4} "3. The trial court committed reversible, prejudicial error in granting appellees' motion for summary judgment by ruling, as a matter of law, that plaintiff could not sustain a claim for negligence."

{¶ 5} The undisputed facts of this case are as follows. On August 12, 2002, appellant, who is African–American, and his girlfriend went to Helzberg Jewelers in the Franklin Park Mall in Toledo, Ohio, to buy a diamond bracelet. Appellant purchased the bracelet with an in-store credit account at approximately 11:00 a.m. Later that day, at approximately 7:30 p.m., two African–American males entered the store and purchased a diamond bracelet using three credit cards.

After the sale, Jim Goff, the store manager, was suspicious of the cards that were used in the sale, and so he called the Visa and MasterCard credit card companies to inquire about the cards. The fraud divisions were closed and, after waiting some time on the phone, Goff was unable to speak to anyone and hung up.

{¶ 6} The next day, Detective Bigley of the Sylvania Police Department telephoned Goff regarding the use of stolen credit cards at Helzberg Jewelers. Evidently, on August 12, credit cards had been stolen from a vehicle at a health club near the Franklin Park Mall. When the owners of the cards called the credit card companies, they learned that the cards had been used at Helzberg Jewelers. Goff described the individuals to Bigley as two tall African–American men, dressed in jogging suits and baseball hats. Bigley then asked Goff if there was a surveillance tape of the store's activities for August 2, 2002. Goff stated that there was but that he would have to report the incident to the corporate office and obtain an authorization before turning the tape over to the police. Goff subsequently obtained that authorization, and on August 15, Bigley picked up the tape from Helzberg Jewelers. At that time, however, Goff had left for vacation, and another employee turned over the tape.

{¶ 7} Subsequently, Detective Bigley took the tape to Video Graphics for processing. He then took the processed video to several area television stations for broadcasting. The portion of the video that was broadcast, however, contained photographs of appellant Trent Brown and his girlfriend, not pictures of the individuals who had used the stolen credit cards. Evidently, a time-sequencing error in the video-recording equipment showed Brown's picture at the time in the evening when the two males used the stolen credit cards. After the video was aired, Detective Bigley received a tip that identified Brown as the suspect. Thereafter, Brown was arrested and charged with receiving stolen property, forgery, and misuse of a credit card.

{¶ 8} Goff subsequently returned from vacation and learned that the video of the suspect had been broadcast, but because he never saw the broadcast, he never realized that the wrong individual had been identified. Subsequently, Goff received a subpoena from the prosecutor's office that included the name of Trent Brown. Out of curiosity, Goff searched the Helzberg computer for appellant's name and discovered that appellant had an account with the store and had made a legitimate purchase on August 12. Goff immediately reported the discrepancy to Lori Riopelle, Helzberg's loss-prevention manager. He then went to the police station, looked at the photographs, and identified the suspect whom he believed had used the stolen credit cards. The charges against appellant were then dropped.

{¶ 9} On August 11, 2004, Brown filed a complaint in the court below against appellees Helzberg Diamonds and Helzberg Diamonds Corporate Office (collec-

tively, "Helzberg"). Brown asserted claims for negligence; gross negligence and/or reckless conduct; invasion of privacy, false light and false information published to his detriment; and intentional and/or negligent infliction of serious emotional distress. Brown alleged that Helzberg was negligent and reckless in its operation of the video equipment and in tendering the surveillance video to the police and erroneously informing the police that Brown was a customer who had used a stolen credit card to purchase jewelry. Helzberg filed a motion for summary judgment in which it asserted that as a matter of law, it could not be held liable for merely giving information to a police officer when it did not direct the police to arrest Brown. Brown responded with a brief in opposition in which he asserted that because he was a business invitee of Helzberg, and because business invitees are subject to the recording of their images while in Helzberg's store, Helzberg owed Brown a duty to use reasonable care to insure that its use of surveillance equipment did not cause him injury or harm. Brown then asserted that Helzberg breached its duty to him when it failed to maintain the correct time on its video-recording/surveillance equipment and that he was injured as a direct and proximate result of that breach. Brown conceded, however, that he could not prevail on his claims for invasion of privacy, false light and false information published to his detriment, and intentional and/or negligent infliction of serious emotional distress, and so he consented to the dismissal of those counts.

{¶ 10} On July 14, 2005, the lower court issued an opinion and judgment entry in which it granted Helzberg's motion for summary judgment. In particular, the court held that Brown failed to show that Helzberg owed him a duty to properly maintain its video-surveillance equipment. The court further addressed Brown's claim that Helzberg's negligence in providing its in-store video-surveillance tape to the police and erroneously informing the police that Brown was the suspect led to his false arrest. The court held that as a matter of law, no liability could attach to Helzberg when it did not direct or request that Brown be arrested. It is from that judgment that Brown now appeals.

{¶ 11} Because all of Brown's assignments of error challenge various aspects of the lower court's order granting appellees summary judgment, we will apply the same standard of review to our discussion of those issues. Appellate review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can conclude only that the moving party is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46; Civ.R. 56(C).

{¶ 12} Brown's assignments of error are related and will be discussed together. Brown asserts that because he was a business invitee of Helzberg and because business invitees of Helzberg Jewelers are subjected to surveillance cameras and video recording of their images when they are in the store, Helzberg owed him a duty to use reasonable care to ensure that its use and operation of the equipment did not cause him harm.

{¶ 13} It is well settled that to establish actionable negligence, a plaintiff must show the existence of a duty, a breach of the duty, and an injury proximately resulting therefrom. *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173, 543 N.E.2d 769. Generally, an owner or occupier of a business premises owes business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn invitees of latent or hidden dangers. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. See, also, *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, 828 N.E.2d 683, at ¶ 25–26.

{¶ 14} It is undisputed that Brown was a business invitee while in Helzberg's store. Brown therefore asserts that Helzberg owed him a duty to maintain the store in a reasonably safe condition and that that duty encompassed a duty to use reasonable care to ensure that the use and operation of the store's surveillance equipment did not cause harm to the store's customers. In support of this assertion, Brown cites provisions of Helzberg's Loss Prevention Manual. Under the heading "Store Operation and Security Policy 6.09," the manual reads, "The security and safety of our associates and customers is of the utmost importance to Helzberg Diamonds. The store operating and security procedures described below will protect the assets of our company as well as our associates. * * * The video systems in our stores are an important element in maintaining a safe and secure environment for our associates and customers. The cameras, video recorder and monitors MUST be operational at all times. * * * The Manager on duty is responsible for verifying the correct operation, including time, date and the recording speed, of this equipment as well as general maintenance including requesting service or replacement as needed. Following these procedures will assist Loss Prevention in investigating losses and the Police in proceeding with criminal charges." Brown contends that based on this language, Helzberg owed him a duty to properly maintain its video equipment to avoid injuring its customers in the manner in which he has been injured in this case. We must, however, agree with the trial court that the store's operating and security procedures described in the manual are intended to protect the assets of the company and its associates. The manual expressly states as such.

{¶ 15} In addition, "[t]he existence of a duty depends on the foreseeability of the injury." *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 472 N.E.2d 707. "The test for foreseeability is whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. * * * The foreseeability of harm usually depends on the defendant's knowledge." (Citations omitted.) Id. In the present case, Jim Goff properly described the suspects to the police as two tall African–American men, dressed in jogging suits and baseball hats. The pictures from the video that the police submitted for broadcasting, however, clearly showed a man and a woman, neither of whom were wearing jogging suits or baseball hats. Moreover, the date stamped on the recording image read "10–14–89," approximately 13 years before the events that resulted in Brown's arrest. No one from Helzberg cued up the video tape before turning it over to the police. Accordingly, in conducting their investigation, the police had a description of the suspects and the video. The two were clearly inconsistent, but the police did not ask Goff to review the tape until after it had been broadcast. Helzberg could not have foreseen that the police would fail to do their job to properly investigate the case before broadcasting Brown's image.

{¶ 16} Moreover, the police, not Helzberg, made the decision to broadcast the video image of Brown. That decision led to Brown's arrest. In *Barnes v. Meijer Dept. Store,* 12th Dist. No. CA2003–09–246, 2004-Ohio-1716, 2004 WL 720906, at ¶ 17, the court held, "[P]rivate citizens who call upon assistance from law enforcement officers are insulated from tort liability if their request for assistance does not amount to a request for arrest. *Niessel* [*v. Meijer, Inc.,*] Warren App. No. CA2001–04–027, at 14 [2001 WL 1598325], quoting *White v. Std. Oil Co.* (1984), 16 Ohio App.3d 21 [16 OBR 22, 474 N.E.2d 366] * * *. To impose liability on a private citizen for a wrongful arrest, the arrest by the officer must be so induced or instigated by the defendant that the arrest is made by the officer, not of his own volition, but to carry out the request of the defendant. *Beverly v. The Lawson Company* (Aug. 18, 1983), Cuyahoga App. No. 45119, 1983 WL 4607, at *4. No liability is incurred if a person merely gives information to an officer tending to show a crime has been committed. *Id.* The same applies if the action is one for false imprisonment. *Id.*" Although the court in *Barnes* was addressing the plaintiff's claims for false arrest and false imprisonment, we find the quoted passage to be equally applicable to Brown's claim for negligence in the instant case. No one from Helzberg directed the police to broadcast Brown's image or to arrest him.

{¶ 17} We therefore conclude that the trial court did not err in granting Helzberg summary judgment on Brown's claims of negligence, and the three assignments of error are not well taken.

{¶ 18} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

SINGER, P.J., and HANDWORK, J., concur.