[Cite as *Smith v. Wal-Mart Stores, Inc.*, 2019-Ohio-2425.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| SHAHIN SMITH, et al. | : | |
| | : | |
| Plaintiffs-Appellants, | : | Case No. 18CA3661 |
| | : | |
| vs. | : | |
| | : | <u>DECISION AND JUDGMENT</u> |
| WAL-MART STORES, INC, et al., | : | <u>ENTRY</u> |
| | : | |
| Defendants-Appellants. | : | |

_____

APPEARANCES:

Thomas W. Ellis and Frederic A. Portman, Agee, Clymer, Mitchell & Portman, Columbus, Ohio, for Appellants.

Patrick Kasson and Jackie M. Jewell, Reminger Co., LPA, Columbus, Ohio, for Appellee, Walmart Stores, Inc.[1]

_____

Smith, P. J.

{¶1} Appellants, Shahin and Steven Smith, appeal the trial court's grant of summary judgment in favor of Appellee, Wal-Mart Stores, Inc., on their claims for negligence and loss of consortium. On appeal, Appellants contend that the trial court erred by granting summary judgment in favor of

---

[1] Appellants initially named Walmart Stores, Inc. as well as John Doe Individuals One through Five, John Doe Corporations One through Five, and John Doe Business Entities One through Five as defendants. However, none of the John Doe defendants participated below and they are not participating on appeal. Further, it appears that when the trial court granted summary judgment to Appellee, Walmart Stores, Inc., it entered judgment against Appellants as to their complaint in its entirety.

Appellee.  In light of our finding that no genuine issue of material fact exists as to whether the hazard at issue herein was open and obvious, we conclude Appellant's sole assignment of error lacks merit.  Accordingly, it is overruled and the judgment of the trial court is affirmed.

FACTS

{¶2} Appellant, Shahin Smith, went to the Wal-Mart store located in Chillicothe, Ohio on July 23, 2015, where she had shopped thousands of times, to purchase vegetables and medicine.  Her husband, Steven Smith, accompanied her during her trip and was pushing the shopping cart for her while she shopped.  Mrs. Smith approached a produce bin stocked with tomatoes and she "reached hard" and leaned against the bin in order to grab the particular tomato she wanted.  As she reached and leaned, she felt something that seemed like a knife stabbing her in the thigh.  When she looked to see what had caused her pain, she saw what she described as a "broken basket" with a "knife type thing" that was sharp.  Mrs. Smith reported the incident to store management who inspected and photographed the basket.  Mrs. Smith then left the store with her husband.  She eventually sought medical treatment for her injury, had an MRI and underwent a month and a half of physical therapy with little improvement.  As a result of her injury, she ended up seeking treatment from a general physician, a

neurologist and a pain management physician. Although acupuncture was recommended, it was cost prohibitive.

{¶3} As a result of the incident, Appellants filed a complaint against Appellee asserting claims for negligence and loss of consortium. Appellants originally filed their complaint on July 16, 2016, but later dismissed the complaint and refiled it on April 26, 2018. Appellee, Wal-Mart Stores, Inc., filed a motion for summary judgment on May 14, 2018, arguing the hazard which led to Appellant's injury was open and obvious, and thus Appellee owed no duty of care to Appellant. Appellee alternatively argued that even if a duty was owed, Appellants could not demonstrate it either created the hazard, or had actual or constructive knowledge of the hazard, and thus Appellants had failed to demonstrate the breach element of their negligence claim.

{¶4} Appellants filed a memorandum contra Appellee's motion for summary judgment, however, the trial court granted summary judgment in favor of Appellee on July 20, 2018. The trial court's judgment entry was general in nature and did not explain or state the grounds for its decision. Appellants now bring their timely appeal from the trial court's judgment, setting forth one assignment of error for our review.

ASSIGNMENT OF ERROR

I.    "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO APPELLEE."

LEGAL ANALYSIS

{¶5} In their sole assignment of error, Appellants contend the trial court erred by granting summary judgment to Appellee.  Appellants further contend the issue presented for review is whether their deposition testimony and the applicable law establish a genuine issue of material fact such that the trial court should have denied Appellee's motion for summary judgment. Appellee contends the trial court correctly granted summary judgment in its favor, as the hazard at issue was open and obvious, and thus obviated the duty of care owed by Appellees.  Appellee alternatively argues that if this Court finds a duty was in fact owed to Appellant, Shahin Smith, Appellants failed to establish a breach of that duty when they failed to introduce evidence indicating Appellee created the hazard or had actual or constructive knowledge of the hazard.  Thus, we begin our analysis with a review of the appropriate standard of review when considering the grant or denial of a motion for summary judgment, as well as the framework within which we must consider the negligence argument raised by Appellants.

STANDARD OF REVIEW

{¶6} Appellate courts conduct a de novo review of trial court summary judgment decisions. See, *e.g., Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. See *Brown v. Scioto Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); *Morehead v. Conley*, 75 Ohio App.3d 409, 411–12, 599 N.E.2d 786 (1991). Thus, to determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ. R. 56 summary judgment standard, as well as the applicable law.

{¶7} Civ. R. 56(C) provides, in relevant part, as follows:

"* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered

except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶8} Thus, pursuant to Civ.R. 56, a trial court may not award summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, *e.g., Vahila v. Hall*, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

NEGLIGENCE

{¶9} A successful negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, *e.g., Texler v. D.O.*

*Summers Cleaners*, 81 Ohio St.3d 677, 680, 693 N.E.2d 271 (1998); *Jeffers*

*v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989); *Menifee v. Ohio*

*Welding Products, Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).  If a

defendant points to evidence to illustrate that the plaintiff will be unable to

prove any one of the foregoing elements, and if the plaintiff fails to respond

as Civ.R. 56 provides, the defendant is entitled to judgment as a matter of

law.  *See Lang v. Holly Hill Motel, Inc.*, 4th Dist. No. 06CA18, 2007–Ohio–

3898, ¶19, affirmed, 122 Ohio St.3d 120, 2009–Ohio–2495, 909 N.E.2d 120.

{¶10} The existence of a defendant's duty is a threshold question in a

negligence case.  See *Armstrong v. Best Buy Company, Inc.*, 99 Ohio St.3d

79, 2003–Ohio–2573, 788 N.E.2d 1088, ¶13.  In a premises liability case,

the relationship between the owner or occupier of the premises and the

injured party determines the duty owed.  See, *e.g., Gladon v. Greater*

*Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287

(1996); *Shump v. First Continental–Robinwood Assocs.*, 71 Ohio St.3d 414,

417, 644 N.E.2d 291 (1994).  In the case at bar, the parties do not dispute

that Appellant was a business invitee.

{¶11} A business premises owner or occupier possesses the duty to

exercise ordinary care to maintain its premises in a reasonably safe

condition, such that business invitees will not unreasonably or unnecessarily

be exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 480 N.E.2d 474 (1985). A premises owner or occupier is not, however, an insurer of its invitees' safety. *Id.* While the premises owner must warn its invitees of latent or concealed dangers if the owner knows or has reason to know of the hidden dangers, invitees are expected to take reasonable precautions to avoid dangers that are patent or obvious. *Jackson v. Kings Island*, 58 Ohio St.2d 357, 358, 390 N.E.2d 810 (1979); see also, *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 623 N.E.2d 1175 (1993); *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus (1968).

{¶12} Therefore, when a danger is open and obvious, a premises owner owes no duty of care to individuals lawfully on the premises. See *Armstrong* at ¶5; *Sidle*, paragraph one of the syllabus. By focusing on duty, "the rule properly considers the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it." *Armstrong* at ¶13. The underlying rationale is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Id.* at ¶5. "The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability. Rather, it is the

fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id.* at ¶13. Thus, the open and obvious doctrine obviates the duty to warn and acts as a complete bar to recovery. *Id*. at ¶5. Furthermore, the issue of whether a hazard is open and obvious may be decided as a matter of law when no factual issues are disputed. *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 710, 2005–Ohio 2098, 828 N.E.2d 683, ¶28; citing *Armstrong*.

## THE OPEN AND OBVIOUS DOCTRINE

{¶13} This Court has explained that "[t]he open and obvious doctrine relates to the threshold question of whether the defendant possessed a duty." *Ray v. Wal-Mart Stores, Inc.*, 4th Dist. Washington No. 08CA41, 2009-Ohio-4542, ¶21; citing *Armstrong* at ¶13; see also *Frano v. Red Robin Internatl. Inc.*, 181 Ohio App.3d 13, 2009-Ohio-685, 907 N.E.2d 796, ¶19. "The open and obvious doctrine focuses on the nature of the hazard, not on any party's particular conduct." *Id.* Accordingly, whether a defendant created the dangerous condition becomes a relevant question only if a plaintiff demonstrates that the defendant owed the plaintiff a duty of care. *Ray* at  21.

{¶14} Additionally, it is important to note that the determination as to whether a particular danger is open and obvious does not revolve around a

plaintiff's peculiar sensibilities or whether the plaintiff actually observed the danger. *Id.* at ¶22; citing *Armstrong* at ¶13; *Lang* at ¶25. Instead, the question is whether, under an objective standard, the danger would have been discernible to a reasonable person. *See Lang* at ¶25. To the extent a reasonable person would not have discerned the danger, then by definition, that danger would not be open and obvious.

{¶15} However, as explained in *Ray*, supra, "attendant circumstances may create a genuine issue of material fact as to whether a danger is open and obvious." *Ray at ¶23*; citing *Lang* at ¶24. This Court has explained as follows regarding the attendant circumstances exception to the open and obvious doctrine in slip and fall cases:[2]

> " 'Attendant circumstances' may also create a genuine issue of material fact as to whether a hazard is open and obvious. See *Lang*, at ¶24; *Cummin v. Image Mart, Inc.*, Franklin App. No. 03AP1284, 2004-Ohio-2840, at ¶8, citing *McGuire v. Sears, Roebuck & Co*. (1996), 118 Ohio App.3d 494, 498, 693 N.E.2d 807. An attendant circumstance is a factor that contributes to the fall and is beyond the injured person's control. See *Backus*

---

[2] Although the case presently before us does not involve a slip and fall, we find the explanation of attendant circumstances to be instructive.

*v. Giant Eagle, Inc.* (1996), 115 Ohio App.3d 155, 158, 684 N.E.2d 1273. 'The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.' *Cummin*, at ¶8, citing *Cash v. Cincinnati* (1981), 66 Ohio St.2d 319, 324, 421 N.E.2d 1275. An 'attendant circumstance' has also been defined to include any distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. [] *McGuire*, 118 Ohio App.3d at 499, 693 N.E.2d 807.

Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. See *McGuire*, 118 Ohio App.3d at 498, 693 N.E.2d 807. Moreover, an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger. As the court explained in *Goode v. Mt.*

*Gillion Baptist Church*, Cuyahoga App. No. 87876, 2006-Ohio-6936, at ¶25: 'The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. The fact that appellant herself was unaware of the hazard is not dispositive of the issue. It is the objective, reasonable person that must find that the danger is not obvious or apparent.' Thus, we use an objective standard to determine whether the danger associated with the stairs was open and obvious. Furthermore, the question of whether a danger is open and obvious is highly fact-specific. *Stanfield v. Amvets Post No. 88*, Miami App. No. 06CA35, 2007-Ohio-1896, at ¶12; *Henry v. Dollar General Store*, Greene App. No.2002-CA-47, 2006-Ohio-206, at ¶16." *Ray* at ¶30-31.

As this Court noted in *Ray* at ¶32, the question of whether particular dangers are open and obvious is a highly-litigated question and the cases are generally very fact specific.

## APPLICATION

{¶16} Appellee cites several slip and fall cases in support of its argument that the hazard at issue herein, a sharp piece of plastic located either directly on or just below a produce bin, was an open and obvious

hazard. Appellants argue the reasoning set forth in slip and fall cases is not applicable to the particular hazard at issue herein. However, this Court has been unable to locate another case in Ohio involving the exact type of hazard at issue presently before us. Thus, we look to other cases that are similar, at best, for guidance and instruction as to whether this particular hazard was open and obvious.

{¶17} *Lambert v. Sack 'N Save, Inc.*, 4th Dist. Ross No. 12CA3319, 2012-Ohio-4686, involved a customer who sustained an injury to her arm after hitting it on a shopping cart. *Lambert* at ¶2. Lambert filed a negligence claim alleging she was injured as a result of the design of the shopping cart, which had vertical metal bars on the outside of the cart, with sharp edges. *Id.* at ¶11. Lambert, in contrast with Appellants herein, did not allege the cart was damaged in any way resulting in an unsafe condition. *Id.* In that case, we affirmed the trial court's grant of summary judgment in favor of the grocery store, reasoning in part on the fact that Lambert had used the cart for twenty minutes prior to injuring herself and had been able to observe the condition of the cart, "which design was readily observable." *Id.* at ¶12. As such, we determined the hazard leading to Lambert's injury was open and obvious.

{¶18} In *Ray*, supra, a customer fell and was injured after she tripped on a produce crate that partially protruded from beneath a produce display table. *Ray* at ¶3. Based in part upon Ray's testimony "that she was not certain whether she would have seen them [the produce crate] had she looked" before falling, this Court held a genuine issue of material fact existed as to whether or not the hazard was open and obvious. *Id.* at ¶41. Again, our holding was limited to the specific facts of that case.

{¶19} Here, the only evidentiary materials in the record for this Court's review are the pleadings and the deposition transcripts of both Shahin and Steven Smith. There are no exhibits, photographs or video footage in the record. In their depositions, Appellants both testified that the sharp, clear plastic piece protruding from the produce bin (or just below the produce bin)[3] was observable prior to the incident resulting in injury to Shahin Smith. For example, Shahin Smith testified as follows during her deposition:

"Q: Where were you looking when you felt contact with your skin? Where were you looking?

A: I was trying to reach to get the tomato.

---

[3] Steven Smith testified that the sharp plastic piece that inflicted Shahin's injury was actually part of the plastic piece located just below the bin where the price is displayed.

Q:     So you were – is it fair to say you were looking at the tomatoes?

A:     Yes.  I was aiming to grab the tomatoes.

Q:     Did you ever look down to see what caused that pain in your leg afterwards?

A:     Afterwards.  Okay.  Well, yeah.  It was so shock.  Just like somebody comes from your back and stabs you, you know?  You just say what was that.  I mean, like – like a shock.  It was just (indicating) because I did it with such a – stretch, a push (indicating).  Probably I pushed on there, too, and I didn't realize.

Q:     So did you look down to see what caused –

A:     Yeah.  After that, yes.

* * *

Q:     So the basket was visible afterwards?

A:     Yeah, because they had stuff in it, I think.

Q:     You could see the basket?

A:     Later on I saw it.

* * *

Q:      Do you think if, before any of all this happened, if you had been looking down at the basket with what you call the sharp side you would have been able to see it?

A:      Yes.  Say it again one more time.

Q:      Sure.  Do you think if before all of this happened, if you had been looking down at the basket, you would have been able to see the sharp side?

A:      I would have.  See, when I work in the hospital, you always look for those things, you know.  And I report that all the time."

Thus, Shahin Smith unequivocally testified that she would have seen the hazard had she been looking for it, but that she was looking up instead, toward the tomatoes, when she reached in to grab one, leaning into the sharp object as she grabbed a tomato.

{¶20} Further, when asked if a Walmart employee would have seen the hazard if they had been looking Mrs. Smith testified that she was not sure, explaining as follows:

"I'm not so sure because it was like hidden type.  It was hard to see.  It was hard to see.  I would have seen it because I think maybe plastic, black, sometimes – it was not obvious unless

you pay attention. * * * As I think we said, after, when I got hit, when I looked, then I noticed it. Before hit, it was hard to see because you have attention on other places."

Thus, Mrs. Smith essentially testified that although the hazard may have been hard to see, she would have seen it, and that it was obvious if one was paying attention.

{¶21} Additionally, with regard to the question of attendant circumstances, Mrs. Smith testified as follows:

"Q: Was there anything blocking, afterwards – I understand you're not certain if you saw it beforehand, but afterwards when you saw it, was there anything blocking your view of it such as a cloth?

A: Such as?

Q: A cloth? Like a tablecloth or tarp?

A: No.

Q: Was there anything that was blocking your view of the basket afterwards when you looked down?

A: Because it was in the lower level, the attention was up.

Q:    That wasn't my question.  My question was afterwards when you looked down, was there anything blocking your view?

A:    No.

Q:    Was the store well lit?

A:    Yes.

* * *

Q:    Were you carrying anything at the time?

A:    My purse probably.  Sometimes I just put – I don't take my purse.  I just put cards in my pocket.  It's easier.

Q:    What about any merchandise?  Were you carrying any merchandise at the time?

A:    No.

Q:    Were you pushing a shopping cart?

A:    I don't think so.

Q:    And you were facing forward because you were reaching for the tomatoes?

A:    Yes."

Thus, based upon the foregoing testimony, it does not appear there were any attendant circumstances that played a role in Appellant sustaining an injury while leaning in to grab a tomato from the produce bin.

{¶22} Appellant's husband, Steven Smith, was with her the day she was injured and witnessed the incident. Mr. Smith testified as follows:

"Q:	Did you ever go over to the area where she was injured?

A:	Yes. I was there with her. I was pushing the cart.

Q:	You were pushing the cart? The piece of plastic which hit your wife's right leg was visible?

A:	Yes. I could see it. I mean, well, it was kind of hard to see because it was clear, but I saw it after she pointed it out to me. I didn't see it before when we were walking up on it.

Q:	So I understand that you weren't able to see it – you didn't see it beforehand?

A:	Right. I saw it after – after she ran into it.

Q:	Do you know if your wife saw the piece of plastic afterwards?

A:	Yeah. She saw it and I saw it, and the two Wal-Mart employees saw it, too. The gentleman took photos of it.

Q:	Was the store well lit?

A:    Yes."

As such, Mr. Smith's testimony demonstrated the plastic piece protruding from the produce bin was observable and was observed after the incident occurred. It just wasn't observed by either him or his wife prior to the incident.

{¶23} As set forth above, the focus of the open and obvious condition doctrine is not based upon a plaintiff's conduct. "Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong* at 82. Thus, the fact that Appellants did not observe the sharp piece of plastic protruding from the produce bin until after the incident occurred does not mean that it was not observable. In fact, as testified to by both Appellants, had they been looking, or paying attention, they would have seen the hazard beforehand.

{¶24} Based upon these facts, we conclude no genuine issue of material facts exists regarding whether the hazard at issue was open and obvious and, as a result, we further conclude Appellee was absolved from taking any further action to warn Appellants. Further, as set forth above, the open and obvious doctrine not only obviates the duty to warn, it acts as a complete bar to recovery. As a result, the question of whether Appellee created the dangerous condition is not relevant, as Appellants have not

demonstrated Appellee owed them a duty of care. Thus, we do not reach the additional arguments as to whether Appellant created the hazard or had actual or constructive knowledge of the hazard. Further, Appellants concede the success of their loss of consortium claims rests on the viability of their negligence claim. Having found the trial court correctly granted Appellee summary judgment on the negligence claim, the trial court's grant of summary judgment in favor of Appellee on the loss of consortium claim was also proper.

{¶25} Accordingly, having found no merit to the sole assignment of error raised by Appellants, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J., & Hess, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Jason P. Smith, Presiding Judge

## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**