[Cite as *Foggin v. Fire Protection Specialists, Inc.*, 2013-Ohio-5541.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

Bennie Foggin, as Administrator of the
Estate of Joseph Foggin, deceased,     :

    :

    Plaintiff-Appellant,               :             No. 12AP-1078
                                                  (C.P.C. No. 10CVB-04-6137)
    :

v.                                           :
                                                  (REGULAR CALENDAR)
Fire Protection Specialists, Inc. et al.,   :

    Defendants-Appellees.         :

    :

---

## D E C I S I O N

### Rendered on December 17, 2013

---

*Malek & Malek, LLC*, and *James Malek*, for appellant.

*Crabbe, Brown & James, LLP*, *Michael R. Henry*, and *Matthew R. Planey*, for appellee Fire Protection Specialists, Inc.

---

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Bennie Foggin, administrator of the estate of Joseph Foggin, deceased, plaintiff-appellant, appeals from the judgment of the Franklin County Court of Common Pleas, in which the court granted the motion for summary judgment filed by Fire Protection Specialists, Inc. ("FPS"), defendant-appellee.

{¶ 2} FPS is a company that maintains fire protection systems. On April 21, 2008, employees of FPS were at the Arbors of Delaware ("Arbors"), a long-term skilled nursing and short-term rehabilitation facility to repair and test the facility's fire sprinkler system. Arbors is owned by Extendicare Health Services, Inc. ("Extendicare"). In order to perform

the work, FPS turned off the sprinkler system, and Arbors employees turned off the monitoring system to prevent a false alarm. The other parts of the fire suppression system were still in operation, including the fire alarms, smoke detectors, pull stations, and fire doors.

{¶ 3}  To repair the sprinkler system, FPS entered the attic space located above the drop ceiling tiles in Arbors' lobby using its own six-foot folding stepladder. FPS employees cut and welded a metal pipe during their repair work. At approximately 11:30 a.m., FPS employees went to lunch, leaving their stepladder next to the attic, leaving the sprinkler system disabled, and leaving the alarm system in test mode.

{¶ 4} While the FPS employees were at lunch, Joseph Foggin ("Foggin"), the director of maintenance for Arbors; Michael Henson, a maintenance assistant; and Ardella Layne, were installing a television. Foggin used FPS's ladder several times to enter the attic to install coaxial cable at the same place FPS was working. Sometime after the television was installed, but while the FPS workers were still on lunch break, Layne told Foggin she smelled smoke. Although Foggin did not smell anything, he and Layne checked areas of the facility. During their inspection, Foggin used FPS's ladder to look in the attic. After a few minutes, Foggin told Layne he had found nothing, and he attempted to use the ladder to get down from the attic. He placed his right foot on the rung below the top step of the ladder and then attempted to move that foot to make room for his left foot. In doing so, the ladder tilted, and Foggin fell from the ladder. Foggin struck his head on a handrail. He suffered serious injuries from which he later died.

{¶ 5} On April 21, 2010, appellant filed a complaint against FPS, alleging negligence and negligent hiring, supervision, and training; Bauer Corporation, the manufacturer of the ladder; and Extendicare. Appellant subsequently dismissed Bauer. On April 5, 2011, FPS filed a motion for summary judgment. On December 28, 2011, Extendicare moved for summary judgment on subrogation issues arising under workers' compensation law. On November 15, 2012, the trial court granted FPS's motion for summary judgment based upon a finding of primary assumption of the risk, and entered judgment accordingly on November 26, 2012. The trial court also denied Extendicare's motion as moot. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

I. The trial court erroneously granted defendant-appellees' motion for summary judgment because genuine issues of material fact remain which should properly be decided by a jury.

II. The trial court erred when it found that the rescue and/or emergency doctrine had no conceivable application to Mr. Foggin's conduct at the time he fell descending the ladder.

III. The Defendants-Appellees had a duty to use ordinary care in performing their work and they failed to use ordinary care and their failure was a proximate cause of Mr. Foggin's fall.

IV. The Emergency and/or Rescue Doctrines are recognized in Ohio and are applicable to the facts of the current case such that the doctrine of Primary Assumption of the Risk does not apply.

{¶ 6} Appellant's arguments in his brief do not track his assignments of error. Thus, we will address all of appellant's assignments of error together, attending to the various arguments set forth in the brief. Appellant's assignments of error assert generally that the trial court erred when it granted summary judgment. Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 7} The elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). Ohio law recognizes three categories of assumption of the risk as defenses to a

negligence claim; express, primary, and implied or secondary. *Schnetz v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 207, 2011-Ohio-3927, ¶ 21 (10th Dist.); *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, ¶ 10 (10th Dist.). In the present case, the trial court granted summary judgment in favor of FPS based upon the doctrine of primary assumption of the risk.

{¶ 8} Primary assumption of the risk is applied in cases where there is no duty owed by the defendant to the plaintiff. *See Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427 (1996); *Cincinnati Baseball Club Co. v. Eno*, 112 Ohio St. 175 (1925). "Underlying this judicially created doctrine is the notion that certain risks are so inherent in some activities that they cannot be eliminated." *Otterbacher v. Brandywine Ski Ctr., Inc.*, 9th Dist. No. 14269 (May 23, 1990). Thus, primary assumption of the risk completely negates a negligence claim because the defendant owes no duty to protect the plaintiff against the inherent risks of the recreational activity in which the plaintiff engages. *Schnetz* at ¶ 24; *Crace* at ¶ 15. Primary assumption of the risk "is a defense of extraordinary strength" because it defeats a plaintiff's ability to allege even a prima facie case of negligence. *Gallagher* at 431. Whether to apply primary assumption of the risk is a matter of law for the court to decide. *Crace* at ¶ 12.

{¶ 9} In order to succeed on a primary assumption of the risk defense, it must be shown that (1) the danger is ordinary to the activity, (2) there is common knowledge that the danger exists, and (3) that the injury occurs as a result of the danger during the course of the activity. *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 12 (10th Dist.). Thus, "[a] plaintiff who reasonably chooses to proceed in the face of a known risk is deemed to have relieved defendant of any duty to protect him." *Siglow v. Smart*, 43 Ohio App.3d 55, 59 (9th Dist.1987). By choosing to participate in an activity, the participant implicitly accepts those risks. *Curtis v. Schmid*, 5th Dist. No. 07 CAE 11 0065, 2008-Ohio-5239, ¶ 54, citing *Pope v. Willey*, 12th Dist. No. CA2004-10-077, 2005-Ohio-4744, ¶ 11. The types of risks associated with the activity are those that are foreseeable and customary risks of the activity. *Id.*

{¶ 10} However, the injured plaintiff's subjective consent to and appreciation for the inherent risks of the recreational activity are immaterial to the analysis. *Schnetz* at ¶ 25; *Crace* at ¶ 16. Those entirely ignorant of the risks of the activity, still assume the risk

by participating in the activity. The law simply deems certain risks as accepted by plaintiff regardless of actual knowledge or consent. *Id.* Therefore, the doctrine of primary assumption of the risk requires an examination of the activity itself. If the activity involves risks that cannot be eliminated, then a finding of primary assumption of the risk is appropriate. *Gehri v. Capital Racing Club, Inc.*, 10th Dist. No. 96APE10-1307 (June 12, 1997); *Schnetz* at ¶ 25. The defendant's conduct is relevant only if it rises to reckless or intentional conduct. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, ¶ 6, fn. 2; *Schnetz* at ¶ 23.

{¶ 11}In the present case, the trial court determined that a ladder tipping and causing the user to fall is a recognized risk of using a ladder. The court found that any person experienced in using a stepladder tacitly acknowledges that it might inadvertently tip over and injure him or her, which is a straightforward, ordinary risk within the realm of common knowledge. The court concluded that a ladder tipping is inherent in the basic activity of using a ladder. The court also noted that any person using a stepladder also recognizes that such a ladder can tip and is most unsteady while standing near the top.

{¶ 12}Appellant first argues that Foggin did not voluntarily engage in the activity of climbing the ladder. Appellant posits that, as a maintenance person, it was Foggin's job to find the unknown source of the smell of smoke, and he felt compelled to check the attic for smoke. Although we agree that Foggin's activities fell within the broadest purview of his job description, Foggin voluntarily decided to use FPS's ladder to check the attic. Despite the assumption that Foggin felt compelled to check for smoke, there is no evidence that Foggin was required or compelled to climb and descend the ladder in question and in the specific manner he chose. Although appellant complains that FPS's ladder was too short to reach the attic opening, it is undisputed that Foggin was not required to use FPS's ladder, and he had full access to the taller ladders provided by Arbors. Appellant also fails to present evidence that Foggin's job was at risk if he chose not to climb or descend FPS's ladder. The record is devoid of any facts that Foggin was compelled to choose the course of conduct that he selected. In fact, Layne testified that it was Foggin who "decided to go up the ladder." She said he used FPS's ladder because it was "handy," and there was nothing prohibiting him from using one of the ladders owned by Arbors.

{¶ 13} We also reject appellant's argument that the risk of falling from the ladder could have been eliminated if FPS would have left a taller ladder in the vicinity. At issue is whether Foggin voluntarily climbed and descended the existing six-foot ladder to reach the attic space and whether the dangers associated with climbing such a ladder are ordinary and within the realm of common knowledge. The danger at issue is the climbing of the ladder in question and not the climbing of a hypothetical ladder. Regardless, climbing ladders is inherently dangerous regardless of the ladder used. *See, e.g., Morgan v. Ohio Conference of United Church of Christ*, 10th Dist. No. 11AP-405, 2012-Ohio-453 (rejecting the plaintiff's argument that primary assumption of the risk did not apply when the risks associated with the inherently risky activity of night hiking could have been eliminated if the instructor had chosen a different trail, because any assessment error in the subjective judgment of the path chosen by the instructor, if any, was not reckless or outside the range of the ordinary activity involved in night hiking, and tripping, slipping, and falling are inherent risks of night hikes, regardless of the trail chosen). Here, like in *Morgan*, any error in the judgment of the height of ladder FPS left in the vicinity of the attic space was not outside the range of the ordinary activity associated with ladder usage, and falling is an inherent risk of ladders regardless of the height of ladder used. Therefore, this argument is without merit.

{¶ 14} We find our case in *Ballinger v. Leaniz Roofing, Ltd.*, 10th Dist. No. 07AP-696, 2008-Ohio-1421, instructive. In *Ballinger*, the defendant was installing a new roof on plaintiff's house. Plaintiff safely climbed the defendant's ladder once to show defendant where to place a dryer vent but then fell the second time he climbed the ladder after the ladder shifted when he was at the top of it. We found the activity in question in *Ballinger* was "ladder climbing." *Id.* at ¶ 13. We concluded that it was common knowledge that climbing ladders is an inherently dangerous activity, and that is why people take extreme care when doing so. *Id.* Failure to take due care when climbing a ladder will often result in losing one's balance, falling from the ladder, or causing the ladder itself to fall. *Id.* For these reasons, ladders carry conspicuous warning labels. *Id.* Therefore, we held in *Ballinger* that ladder climbing was a type of inherently dangerous activity that is subject to primary assumption of risk. We also noted that the plaintiff testified that he appreciated the potential danger associated with climbing the ladder to his roof, there was

nothing that prevented him from repositioning the ladder that day on the second trip up to the roof, and he used the ladder because "[i]t was there." *Id.* at ¶ 14. We also acknowledged that transferring from the ladder can be quite daunting. *Id.* at ¶ 17. When only one foot is on the ladder, the weight distribution changes dramatically, which can easily cause the ladder to shift in the direction of the foot that is still planted firmly on the ladder. *Id.* We recognized that poor technique in this regard would foil even the most perfectly erected ladder. *Id.*

{¶ 15}In the present case, Layne testified in her deposition that it appeared Foggin's right foot was too far to the inside of the second step from the top, and he tried to wiggle his right foot to the side to make room for his left foot on the same step. At that point, the pressure from his right foot caused the ladder to tilt to the right. As we recognized in *Ballinger*, it is inherent in all stepladders that there is a danger of the ladder shifting when only one foot is on a step near the top of the ladder. Furthermore, Layne testified that she and Foggin learned in their safety training at Arbors that you never step on the top steps of a ladder. Similarly, Henson, who was hired to work in the maintenance department at Arbors two weeks before the incident, testified that he learned during his Arbors safety training "[t]he basic common knowledge of the ladder: Always stay within the parameters, don't step on the top two rungs, make sure you ha[ve] the proper ladder for the proper job." Therefore, we find that the danger of a stepladder falling, particularly when using the top rungs, is ordinary to stepladders, and it is common knowledge that this danger exists. For the foregoing reasons, we find the trial court did not err when it applied the doctrine of primary assumption of the risk to the present case to find FPS owed no duty to Foggin.

{¶ 16}Appellant next argues that, at the time of his injury, Foggin was attempting a rescue from an imminent and serious peril, and, thus, his action was not barred by the defense of primary assumption of the risk. A person injured during an attempted rescue may recover from the party negligently causing the danger to the same extent as the person who required assistance from the rescuer. *Bennett v. Stanley*, 92 Ohio St.3d 35, 46 (2001) (Cook, J., dissenting). This "rescue doctrine" has long been a part of Ohio's common law. *Estate of Minser v. Poinsatte*, 129 Ohio App.3d 398, 401-02 (6th Dist.1998); *Reese v. Minor*, 2 Ohio App.3d 440 (1st Dist.1981). However, one may be a

rescuer only as long as he or she has a reasonable belief that a victim is in peril. *Marks v. Wagner*, 52 Ohio App.2d 320, 324 (3d Dist.1977). "[A] reasonable belief of continued peril could not exist in a case where the negligent act causing the victim's injuries had run its course and the victim's life was no longer in peril." *Id.*

{¶ 17}Notwithstanding, we agree with the trial court that the rescue doctrine would not apply to the present case because the peril was over at the time of Foggin's fall. Although this case presents unfortunate circumstances, the facts do not support a finding that Foggin's or anyone else's life was in peril at the time Foggin fell. Neither Layne nor Foggin saw fire or smoke. Foggin did not smell any smoke. Layne testified that there was no sense of panic, no residents or other employees said they smelled smoke, none of the residents sitting in the lobby near the location of the incident were asked to move, and none of the nearby residents were using oxygen, which is highly flammable. In her deposition, Layne said that she did not believe the situation was urgent, the entire situation unfolded in a matter of seconds, and Foggin did not act like he believed it was urgent. Layne said that Foggin was not going up or coming down the ladder in a hurried or panicked manner. Therefore, we conclude that there was no evidence that anyone's life was in peril, and, even if there was any peril, such had dissipated after being unable to find the source of the smoke in the attic or surrounding areas. For all of the foregoing reasons, we must overrule appellant's first, second, third, and fourth assignments of error.

{¶ 18}Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____