[Cite as *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 2018-Ohio-1197.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105950**

---

# SUZANNE THAYER, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# B.L. BUILDING & REMODELING, L.L.C., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED; REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-863454

**BEFORE:** E.A. Gallagher, A.J., Stewart, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** March 29, 2018

**ATTORNEYS FOR APPELLANTS**

Michael D. Shroge
Plevin & Gallucci Co., L.P.A.
55 Public Square, Suite 2222
Cleveland, Ohio 44113

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, Suite 1910
50 Public Square
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEES**

Colleen A. Mountcastle
Gary L. Nicholson
Todd M. Haemmerle
Gallagher Sharp L.L.P.
Buckley Building, Sixth Floor
1501 Euclid Avenue
Cleveland, Ohio 44115

EILEEN A. GALLAGHER, A.J.:

{¶1} Plaintiffs-appellants Suzanne Thayer ("Thayer") and Mark Thayer (collectively, "appellants") appeal from the trial court's order granting summary judgment in favor of defendant-appellee B.L. Building & Remodeling, L.L.C. ("B.L. Building") on their negligence claim arising out of a trip-and-fall accident. For the reasons that follow, we reverse the trial court's judgment and remand the matter for further proceedings.

**Factual and Procedural Background**

{¶2} On June 18, 2014, Thayer, a registered nurse, was working the night shift (7:00 p.m. to 7:00 a.m.) in the labor and delivery department of St. John Medical Center ("St. John's") in Westlake, Ohio. She began working at St. John in May 2014 as a PRN nurse, working 12 to 24 hours a week on average, after working 20 years as a labor and delivery nurse at Mercy Hospital f.k.a. Lorain Community Hospital.

{¶3} At some point during her shift, Thayer and another nurse, Kristin Mulica, went into the kitchenette area of the labor and delivery floor to get a beverage and ice for a patient's husband. The kitchenette contained a refrigerator, ice machine, coffee machine, microwave and a table and chairs where patients' families could sit and wait. At the time, the kitchenette was being remodeled and was under construction. Thayer and Mulica testified that the nurses had not been given prior notice of the construction and that they first learned the kitchenette was being remodeled when they entered the area that evening.

{¶4} B.L. Building was the contractor hired to remodel the kitchenette. Prior to the construction, the kitchenette had been open. Brian Landon, the company's owner and president, testified that his company had been installing new railings for St. John's when the hospital's director handed him a sketch and asked if he could close off the kitchenette to make it more private. Landon testified that the project involved constructing a partial wall and installing a three-foot-by-seven-foot door and a three-foot-by-six-foot window.[1] He testified that B.L. Building used drywall, metal studs and a metal sill to create a "pictured framed window opening." The hospital supplied the door.

{¶5} On the evening of June 18, 2014, the opening for the window had been partially constructed, but glass had not yet been placed in the window opening.[2] The base of the partially constructed window opening was approximately 12 inches from the floor.

{¶6} Thayer testified that she was conversing with Mulica and Jennifer Campbell, M.D., an OB hospitalist at St. John's, as she entered the kitchenette. Thayer testified that she was "not sure" how she entered the kitchenette but stated that she "did

---

[1]At his deposition, Landon testified that, prior to the project, the opening for the kitchenette was "an 8 to a 10-foot opening." In an affidavit submitted in support of B.L. Building's motion for summary judgment, he testified that the opening was "approximately 7 feet by 13 feet."

[2]It is not clear from the record whether the door had yet been installed. Although Campbell testified that she entered the kitchenette through the door, Thayer could not recall if there were "one or two openings" in the wall at the time of her fall or whether the "strip [of wall] in the middle that separates the door from the window" was yet in place.

not walk over anything." Mulica testified that when she and Thayer entered the kitchenette, they were "focused on what the patient asked for, and we were getting her that item, so that was our focus" and that they did not discuss the construction. Campbell, who was in the kitchenette getting ice water, testified that she entered the kitchenette by walking through the door.[3]

{¶7} After she got the beverage and ice, Thayer exited the kitchenette. Thayer testified that she was talking to Mulica and Campbell, looking "[s]traight ahead," when she tripped on "an eight-inch piece of wood" and fell through the partially constructed window opening. Thayer testified that she struck both of her shins against the base of the window opening, hit both of her forearms on the "outside of the molding" and that her body then "flung to the left side of the pane" as she went through the window opening. Thayer testified that she caught herself and stayed on her feet albeit "[w]ith some kind of body contortion."

{¶8} Mulica witnessed the incident. Mulica testified that she was in the kitchenette when she saw Thayer trip over the "hump" at the bottom of the wall where the window was going to be installed. Mulica testified that Thayer fell through the window opening but "caught herself," hitting her shoulder against the window jamb and "skinning up" her knees and elbows. Campbell did not see Thayer trip and fall, i.e., Campbell testified that Thayer fell to her right, out of her field of vision, but saw her immediately after the fall.

---

[3]Neither Mulica nor Campbell testified as to how Thayer entered the kitchenette.

{¶9} Campbell testified that there was nothing precluding anyone from using the door to enter or exit the kitchenette, that the portion of the wall between the floor and the window opening was in plain view with nothing obstructing it and that she had not seen anyone else attempt to exit the kitchenette through the partially constructed window opening. Mulica testified that the area was well lit.

{¶10} Thayer, Mulica and Campbell each testified that, at the time Thayer fell, there was no caution tape, cones or any other "markings" or warnings to indicate that the area was under construction or to block off access to the partially constructed window. Nurse manager Julianne Cribbs similarly testified that when she viewed the kitchenette area shortly after the incident, "there was nothing there."

{¶11} Landon disputed the claim that B.L. Building had placed no caution tape over the partially constructed window opening prior to Thayer's fall. He testified that he and one of his employees, Adam Biltz, were the only two persons who worked on the construction portion of the kitchenette remodel.[4] He testified that the hospital did not want the area closed off to the public during the remodeling and that, therefore, they "would not leave anything open without caution tape being on it." He stated that when he and Biltz left for the day, they would put caution tape over the window opening that existed before the glass plate was installed. He testified that they did this "so that you see obviously that you can't walk through an opening." "It's just what you do * * * if you have something that's not completed. * * * You don't want them to use that."

---

[4]Landon testified that subcontractors did the wallpaper removal, painting and flooring work.

Landon testified he was typically on the job from 8:00 a.m. until 4:30 p.m. and that he had no way of knowing what may have happened or who may have had access to the room after he left for the day. Landon testified that B.L. Building did not place any other warnings on, or barriers to, the partially constructed window opening before the project was completed.

{¶12} Thayer testified that after she fell, her shins were bleeding, she felt a sharp pain in her left shoulder and she had abrasions on her forearms. She changed her scrubs, cleaned the blood off of her legs and finished her shift. After her shift, Thayer went home and went to bed. She did not immediately seek medical treatment for her injuries. On July 13, 2014, Thayer went to the emergency room due to "intense pain" and loss of motion in her left arm and shoulder. In February 2015, Thayer had surgery on her left shoulder

{¶13} On May 18, 2016, appellants filed suit against B.L. Building, asserting a negligence claim for the injuries Thayer sustained in the incident. Appellants alleged that B.L. Building knew or should have known of the dangers presented by the construction area and failed to take reasonable precautions, including providing warnings or other safeguards, to prevent her foreseeable injuries. Appellants claimed over $60,000 in medical expenses and $70,000 in lost wages as a result of the incident. Mark Thayer also asserted a loss of consortium claim.

{¶14} B.L. Building filed an answer denying liability and asserting various affirmative defenses. In March 2017, it filed a motion for summary judgment. B.L.

Building argued that appellants' claims were barred because the danger posed by the window opening was open and obvious, that B.L. Building owed no duty to warn or protect Thayer from open and obvious hazards and there was no evidence that B.L. Building otherwise breached any duty owed to Thayer.

**{¶15}** Appellants opposed the motion. They argued that the open and obvious doctrine did not apply to independent contractors and that, under the facts and circumstances at issue, a reasonable jury could find that B.L. Building had breached a duty of care owed to Thayer and caused her injuries.

**{¶16}** On June 5, 2017, the trial court granted B.L. Building's motion for summary judgment. The trial court found that there were no genuine issues of material fact, that reasonable minds could reach only one conclusion and that B.L. Building was entitled to judgment as a matter of law. The trial court did not explain the reasoning behind its decision.

**{¶17}** Appellants appealed, raising the following assignment of error for review:

The trial judge erred, as a matter of law, by granting summary judgment upon plaintiff[s]-appellants' claims of common law negligence.

**Law and Analysis**

**Standard of Review**

**{¶18}** We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

**{¶19}** Under Civ.R. 56, summary judgment is appropriate when no genuine issue as to any material fact exists and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

**{¶20}** On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has a reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

### Negligence

**{¶21}** In their sole assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of B.L. Building on their negligence claim. They argue that summary judgment was improper because (1) Thayer's injury was foreseeable, (2) the open and obvious doctrine did not apply, (3) "sensible jurors" could conclude that B.L. Building breached a duty owed to Thayer by installing a "one foot high trip hazard" without any warnings or barriers and (4) any issues of comparative negligence needed to be resolved by the jury.

**{¶22}** B.L. Building asserts that the trial court's entry of summary judgment was proper because (1) "reasonable minds" could only conclude, given the "open and obvious nature" of the alleged hazard, that B.L. Building did not breach a duty owed to Thayer, (2) Thayer presented no evidence of "attendant circumstances" that excused her failure to observe the potential hazard and (3) Thayer's own negligence outweighed any alleged negligence by B.L. Building.

**{¶23}** "Under Ohio law, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence." *Miller v. Moyer*, 6th Dist. Sandusky No. S-16-033, 2017-Ohio-7106, ¶ 15; *see also Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 645, 597 N.E.2d 504 (1992). In such cases, the open and obvious doctrine — which provides that a property owner or occupier has no duty to warn or protect an invitee against open and obvious dangers on the property — does not apply and is not a bar to a negligence claim brought by a person injured by the dangerous condition. *See Simmers* at syllabus ("An independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property.").

**{¶24}** To prove negligence, a plaintiff must establish the existence of a duty, a breach of that duty and an injury proximately resulting from the breach of duty. *See, e.g., Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). A defendant's duty to a plaintiff depends upon the relationship between the parties and the

foreseeability of injury. *Simmers* at 645. Injury is foreseeable if a reasonably prudent person would anticipate that his or her act is likely to cause harm. *Id.*; *Menifee* at 77. Whether a duty exists is question of law for the court to determine. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). Whether a defendant "properly discharged [its] duty of care" is usually a question of fact for the jury. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).

{¶25} In this case, B.L. Building owed a duty of ordinary care to Thayer to protect her from harm related to its construction work on the kitchenette. *See, e.g., Royce v. Yardmaster*, 11th Dist. Lake No. 2007-L-080, 2008-Ohio-1030, ¶ 21 ("An independent contractor owes a general duty of care toward the owner's invitee, i.e., he must exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances."); *see also Jackson v. J-F Ents.*, 6th Dist. Lucas No. L-10-1285, 2011-Ohio-1543, ¶ 13; *McGuire v. Sears, Roebuck & Co.*, 118 Ohio App.3d 494, 500, 693 N.E.2d 807 (1st Dist.1996) ("As an independent contractor, * * * [defendant] * * * was required to warn [store's] customers of any foreseeable risk of harm it created on the premises"). However, Thayer also had a duty to exercise reasonable care to avoid injury to herself.

{¶26} While the open and obvious doctrine does not relieve an independent contractor of a duty of care, the open and obvious nature of a hazard may be relevant for other purposes in connection with a negligence claim. As the Ohio Supreme Court explained in *Simmers*, a hazardous condition that is "sufficiently discernible" may, in and

of itself, "constitute an adequate warning of the danger," precluding a finding of breach. *Simmers*, 64 Ohio St.3d at 646, 597 N.E.2d 504; *see also Brock v. Food, Folks & Fun, Inc.*, 2d Dist. Montgomery No. 25719, 2014-Ohio-2668, ¶ 20-23 (plaintiff could not prove that defendant contractor breached its duty of ordinary care to plaintiff who fell on or near handicap accessible ramp where ramp was "distinct and observable," plaintiff's view of the ramp was not obstructed in anyway and plaintiff's "admitted failure to recognize and appreciate the attendant hazards and ordinary danger associated with the handicap accessible ramp were not foreseeable" by the defendant); *Zitron v. Sweep-A-Lot*, 10th Dist. Franklin No. 09AP-1110, 2010-Ohio-2733, ¶ 2-3, 16  (trial court did not err in granting summary judgment on negligence claim against independent contractor where plaintiff tripped on a hose contractor's employee was using to clean sidewalk; plaintiff could not prove that contractor breached its duty of ordinary care because hose "was in plain sight, was easily observable to a reasonably prudent person who could be expected to protect himself or herself, and did not create a foreseeable risk of unreasonable harm").

{¶27} Likewise, a plaintiff's failure to protect himself or herself from an obvious hazard may constitute contributory negligence. A plaintiff's contributory negligence, however, does not automatically preclude the plaintiff from recovering damages proximately caused by a defendant's negligence. Under R.C. 2315.33,

> "[t]he contributory fault of a person does not bar the person as plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons from whom the plaintiff seeks recovery in [the] action and of

all other persons from whom the plaintiff does not seek recovery in [the] action."

**{¶28}** Following a thorough review of the record, viewing the evidence in the light most favorable to Thayer, we find that genuine issues of material fact exist that cannot be properly resolved on summary judgment. On the record before us, we believe reasonable minds could disagree as to whether B.L. Building breached its duty of ordinary care to Thayer and whether any such breach was the proximate cause of Thayer's injuries. We also believe issues of fact exist as to whether Thayer was contributorily negligent in failing to observe and avoid the hazard presented by the partially constructed window and, if so, the extent to which Thayer's own negligence proximately caused her injuries.

**{¶29}** This is not a case in which the trip hazard was so open and obvious that reasonable minds could only conclude that no warnings or other safeguards were necessary to protect persons who were using the kitchenette from the hazard. *Compare Brock*, 2014-Ohio-2668, at ¶ 20-23; *Zitron*, 2010-Ohio-2733, at ¶ 16. Indeed, Landon testified that the reason B.L. Building placed caution tape over the window opening[5] was "so that you see obviously that you can't walk through [the] opening," apparently anticipating that someone entering or exiting the kitchenette might not otherwise see or appreciate the danger posed by the partially constructed window opening.

---

[5]As noted above, the parties dispute whether B.L. Building, in fact, placed caution tape over the partially constructed window opening prior to Thayer's fall. Landon testified that caution tape was placed over the window opening; Thayer and her coworkers testified unequivocally that they saw no caution tape over the window opening prior to the incident.

{¶30} Likewise, although there is evidence from which it could be inferred that Thayer's injuries were due to distraction or lack of attentiveness on her part, this is not a case in which the evidence of contributory negligence is "so compelling" that a reasonable jury could only find that Thayer's contributory fault was "greater than the combined tortious conduct of all other persons from whom [she] seeks recovery in this action and of all other persons from whom [she] does not seek recovery in this action" such that she would be barred from recovery under Ohio's comparative negligence statute. R.C. 2315.33; *Simmers*, 64 Ohio St.3d at 646, 597 N.E.2d 504 ("Issues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion."); *see also Young v. New Southgate Lanes*, 8th Dist. Cuyahoga No. 88552, 2007-Ohio-2923, ¶ 39 (summary judgment in favor of defendant bowling alley was not proper where evidence demonstrated a genuine issue of material fact as to whether plaintiff was more than 50 percent at fault for her injuries when she lost her balance and fell while bowling). Rather, this is a case in which "[t]he question of whether appropriate steps were taken to prevent reasonably foreseeable injuries must be resolved by the trier of fact." *Rodriguez v. Rockefeller Bldg. Assocs.*, 8th Dist. Cuyahoga No. 86059, 2006-Ohio-2208, ¶ 16.

{¶31} Accordingly, the trial court erred in entering summary judgment in favor of B.L. Building. Appellants' assignment of error is sustained

{¶32} Judgment reversed; case remanded.

It is ordered that appellants recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
ANITA LASTER MAYS, J., CONCUR