[Cite as *Crumb v. Leafguard By Beldon, Inc.*, 2020-Ohio-796.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

WILLIAM CRUMB, ET AL.,  :

    Plaintiffs-Appellants,  :

                                          No. 108321

    v.  :

LEAFGUARD BY BELDON, INC., ET AL.,  :

    Defendants-Appellees.  :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**   REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:**  March 5, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-892899

---

### *Appearances:*

The Lindner Law Firm L.L.C. and Daniel F. Lindner, *for appellants*.

Seeley Savidge Ebert & Gourash Co., L.P.A., and Jeffrey M. Elzeer, *for appellees*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} William Crumb and his wife Melissa Crumb ("the Crumbs") appeal a judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of LeafGuard by Beldon, Inc. and ELG Incorporated, d.b.a.

LeafGuard of Northeast Ohio (collectively "LeafGuard").[1]  The Crumbs reside with Melissa's mother MaryAnn Zigmund in a house owned by Zigmund.  Zigmund hired LeafGuard to construct a gutter system for the house.  In a December snow storm, William slipped and fell on ice on the driveway.  The Crumbs filed a negligence action against LeafGuard, alleging the downspout from the gutter created an unnatural accumulation of ice, which caused William to fall.  LeafGuard moved for summary judgment.  The trial court granted the motion, reasoning that LeafGuard was not liable as a matter of law under the doctrine of primary assumption of risk. On appeal, the Crumbs assign the following errors for our review:

> I.    The trial court erred in granting Defendants summary judgment on the basis of primary assumption of the risk, as it ruled that Appellees owed Appellants a duty of care as a matter of law. Primary assumption of the risk can never apply when there is a duty owed between the parties. *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432, 659 N.E.2d 1232, 1236-1237, 1996 Ohio Lexis 80, *11-12, 1996-Ohio-320.

> II.   The trial court erred in granting Defendants summary judgment because primary assumption of risk did not apply to the situation at hand as a matter of law, as the risk of walking near the defective downspout on the first frozen precipitation date of the year was not so inherently dangerous as to preclude Appellants' claims.

> III.  The trial court erred in granting Defendants summary judgment on the grounds of primary assumption of the risk because walking upon an unnatural accumulation of ice and snow is not a risk so obvious or inherently dangerous that personal injury claims must be precluded as a matter of law.  To hold otherwise, and to apply the trial court's reasoning in the case, would preclude any plaintiff from

---

[1] LeafGuard by Beldon, Inc. is a Texas corporation, and LeafGuard of Northeast Ohio, an Ohio corporation, is an authorized sales representative of the former.

bringing any actionable claim for slip and fall due to an unnatural accumulation of ice and snow.

{¶ 2} Finding merit to the appeal, we reverse the trial court's judgment in favor of LeafGuard. The three assignments are sustained to the extent that we agree with appellants that the trial court erred in applying the doctrine of primary assumption of risk to find that LeafGuard owed no duty of care to the plaintiff William Crumb.

## Factual Background

{¶ 3} The Crumbs reside in a house in North Olmsted, Ohio, owned by Zigmund. In 2016, Zigmund made several improvements to her home including a new gutter system and a new driveway. Zigmund hired LeafGuard to install the new gutter system. The new gutter system included a downspout installed on the side of the garage, and the downspout initially drained into an area of grass and dirt. The gutter work was completed in September 16, 2016. Subsequently, on October 12, 2016, the new driveway was installed. The new driveway included the area of grass and dirt, where the downspout was located and where William would park his van. To make it possible to install the concrete pad, the bottom of the downspout was removed. After the new expanded driveway was installed, LeafGuard returned to add an elbow hook on the bottom of the downspout above the driveway.

{¶ 4} Melissa was concerned because the downspout now drained water onto the new concrete area. As a result, her mother called LeafGuard to express

their concerns, and was told someone from LeafGuard would come to inspect the situation.

{¶ 5} On December 15, 2016, there was a snowstorm and the temperature fell to 18 degrees Fahrenheit. That morning, William walked out of the house to clean the snow off his van parked on the concrete area. When he walked around in front of his vehicle, he slipped and fell on ice.

{¶ 6} On February 13, 2018, the Crumbs filed a personal injury action against LeafGuard, asserting negligence and loss of consortium.

{¶ 7} The Crumbs' complaint alleged the gutter system constructed by LeafGuard caused him to slip and fall. LeafGuard moved for summary judgment, asserting that LeafGuard owed no duty of care to William because LeafGuard was not the owner and was not in control of the premises, that William knew and appreciated the risk presented by the weather conditions and the manner in which the downspout drained — which LeafGuard characterized as primary assumption of risk.

Deposition Testimony

{¶ 8} William testified that the driveway was expanded to include an area on the side of the garage for him to park his van. On the morning of the incident, he was getting ready to go to work. As he was walking to his van with a broom to clean the snow off its windshield, he slipped and fell in front of his van. He testified as follows:

Q.     * * * And when you went outside, did you [see] there was snow on the driveway?

A.     Yes. There was snow on the driveway. There was snow on the ground.

Q.     Okay.

A.     And snow everywhere.

Q.     Do you remember if there was ice on the ground along with the snow when you were walking outside?

A.     Just walking in the snow. I didn't see or look for any ice until after I fell.

{¶ 9} After he fell, he could not get up. He used his cell phone to call Melissa for help. While on the ground, he saw ice "everywhere." She ran over to help him even though he told her, "be careful, there's ice." He testified December 15 was the first day he remembered encountering ice in the area.

{¶ 10} William testified that before the new driveway was installed, the downspout drained into grass and dirt. Afterwards, his wife was concerned because the water drained onto the concrete. He knew his wife called LeafGuard several times about the downspout location.

{¶ 11} Melissa testified that she, her husband, and their children live with her mother at the subject residence. She and her mother decided together the improvements to be done for the house, and her mother entered into a contract with LeafGuard. Before the gutters were installed, she raised her concerns with LeafGuard regarding placing a downspout over the driveway concrete due to the snowy winter in Northeast Ohio. The representative responded that the situation would be assessed after the new driveway was installed. When the gutter work was completed in September, Melissa asked her mother to call LeafGuard about her

concerns with the downspout. The driveway was installed soon after. The bottom portion of the downspout was removed to allow the driveway concrete to be poured. LeafGuard later returned to put an elbow on the downspout. Because the downspout was now draining onto the driveway, Melissa remained concerned. She asked her mother to call LeafGuard again and made one or two phone calls herself because she was concerned that the water from the downspout draining onto the concrete could create a slip and fall risk due to the winter weather in Northeast Ohio. She expressed her concerns to both her mother and her husband. She testified that she "just knew that it wasn't right. We live in Northeast Ohio."

{¶ 12} Sometime after the incident, Melissa contacted LeafGuard to reconfigure the downspout. On December 28, 2016, the downspout was reconfigured, but Melissa was still unhappy with the downspout because it was aesthetically odd-looking. She made more phone calls, and LeafGuard reworked the downspout in July 2017.

{¶ 13} Zigmund testified that she resides in her home with her daughter and son-in-law. She testified that she, her daughter, and her son-in-law had discussed the potential danger for slip and fall that may be caused by the ice formed from dripping water out of the downspout onto the driveway. She testified that "we live in Northeast Ohio. It snows in Northeast Ohio. That downspout couldn't stay there the way it was." She acknowledged that her son-in-law was aware of the issue.

{¶ 14} The Crumbs submitted photographs depicting the icy area near the downspout as exhibits. Melissa acknowledged, however, that she did not take the photographs until five days after the incident.

{¶ 15} Deborah Sadlon is Melissa's neighbor and also works at the same commercial property insurance company as Melissa. She testified that, before the incident, Melissa talked to her about her concerns with the downspout. She testified that, on the morning of December 15, 2016, a blizzard caused a "white-out" condition in the area. She looked out her window and saw William on the ground in front of his van. She sent her son out to help him. Later in the day, she went over to the Zigmund residence. Sadlon testified that the area in front of the van was icy and there was ice under the van. She also testified that the ice was from the downspout.

{¶ 16} William Eberhard, an expert for the Crumbs, testified at a deposition that he prepared a report in this case based on the information provided by Melissa and the Crumbs' counsel as well as his review of the photographs taken by Melissa. Regarding the Ohio Plumbing Code's requirement for the storm water to flow away from a building, he was asked if the driveway "slopes down towards the street," and he answered "I believe it does." He testified, however, that he interpreted the Code as not allowing the water to drain across a driveway and therefore the downspout was not code-compliant.

{¶ 17} Eberhard testified "with a reasonable amount of professional certainty" that LeafGuard's downspout installation failed to discharge storm water

to a lawn or road area and it caused an unnatural accumulation of ice to form on the driveway. He testified that the conclusion was based on his review of the photos, which showed ice coming from the downspout that drained across the driveway.[2]

### The Trial Court's Decision

{¶ 18} The trial court issued a decision granting summary judgment in favor of LeafGuard. The trial court found that LeafGuard's motion for summary judgment "succeed[] under the doctrine of primary assumption of the risk." It explained that primary assumption of risk was applicable "where the activity undertaken involves such obvious and unavoidable risks that no duty of care is said to attach" and, in such a situation, a defendant is relieved of the duty to protect a plaintiff who chooses to "proceed in the face of a known risk."

{¶ 19} The trial court reasoned that the deposition testimony indicated William's awareness of the potential risk posed by the downspout in snowy and icy conditions and concluded that, because William was aware of the potential risk of slip and fall created by the water dripping from the downspout when he walked on

---

[2]LeafGuard's expert, Marc Cohan, submitted a report but the record does not contain deposition testimony from him. His report stated the Code allows storm water to discharge onto flat areas, provided the storm water flows away from the building. He stated in his report that, as long as the driveway slopes away from the building, the discharge of the downspout directly onto the driveway would be meeting the Code requirement. The report, however, is not admissible because it was not incorporated by reference into a properly framed affidavit. *Rogoff v. King*, 91 Ohio App.3d 438, 446, 632 N.E.2d 977 (8th Dist.1993); *McIntyre v. Arrow Internatl., Inc.,* 8th Dist. Cuyahoga No. 87845, 2007-Ohio-712, ¶ 17.

the driveway, LeafGuard was not liable for the injuries he sustained from falling on the icy driveway.

## Summary Judgment Standard

{¶ 20} Summary judgment is appropriate where: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his or her favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶ 21} Civ.R. 56(C) states that summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

{¶ 22} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

## Primary Assumption of Risk Inapplicable in This Case

{¶ 23} On appeal, the Crumbs raise three related assignments of error, which all challenge the trial court's application of primary assumption of risk to find that

LeafGuard owed no duty under the circumstances of this case. We agree with the Crumbs' contention that assumption of risk is not applicable here.

{¶ 24} In a negligence case, a plaintiff must establish that the defendant owed a duty to the plaintiff, the defendant breached that duty, and the defendant's breach of duty proximately caused the plaintiff's injury. *See*, *e.g.*, *Lang v. Holly Hill Motel, Inc.*, 122 Ohio St.3d 120, 2009-Ohio-2495, 909 N.E.2d 120, ¶ 10. "Whether a duty exists is a question of law for the court to determine." *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989). As such, we review the question de novo. *Cameron v. Univ. of Toledo*, 2018-Ohio-979, 98 N.E.3d 305, ¶ 52 (10th Dist.).

{¶ 25} This case involves a slip and fall on an accumulation of ice. "To defeat a defendant's motion for summary judgment in a negligence action, in which the plaintiff seeks damages for injuries resulting from a slip-and-fall accident on accumulated ice and snow, plaintiff, in responding to the motion, must first identify the existence of a duty (or duties) owed him by the defendant." *Porter v. Miller*, 13 Ohio App.3d 93, 468 N.E.2d 134 (6th Dist.1983), paragraph one of the syllabus. "Thereafter, plaintiff's response must demonstrate sufficient evidence from which reasonable minds could infer (or genuinely dispute the issues of) breach of duty and proximate causation of the plaintiff's injuries." *Id.*

{¶ 26} The trial court granted summary judgment on the ground that LeafGuard owed no duty to plaintiff William Crumb under the doctrine of primary assumption of risk.

{¶ 27} "Primary assumption of risk is a defense of extraordinary strength." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431, 1996-Ohio-320, 659 N.E.2d 1232. "[A] defendant who asserts this defense asserts that no duty whatsoever is owed to the plaintiff." *Id.* "[A] successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law[.]" *Id.* at 431-432.

{¶ 28} The doctrine of primary assumption of risk is mainly applied in cases involving sports and recreational activities. *Anderson v. Ceccardi*, 6 Ohio St.3d 110, 451 N.E.2d 780 (1983). To be covered under the doctrine, "'the risk must be one that is so inherent to the sport or activity that it cannot be eliminated.'" *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, ¶ 19, quoting *Konseky v. Wood Cty. Agricultural Soc.*, 164 Ohio App.3d 839, 2005-Ohio-7009, 844 N.E.2d 408 (6th Dist.). "Under the doctrine of primary assumption of the risk, a person who voluntarily engages in a recreational or sporting activity assumes the inherent risks of that activity and cannot recover for injuries resulting from the activity unless the defendant acted recklessly or intentionally in causing the injuries." *Cameron*, 2018-Ohio-979, 98 N.E.3d 305. Certain risks are so intrinsic in some activities that the risk of injury is unavoidable. *Morgan v. Ohio Conference of the United Church of Christ*, 10th Dist. Franklin No. 11AP-405, 2012-Ohio-453, ¶ 13.

{¶ 29} "'[P]rimary assumption of [the] risk requires an examination of the activity itself and not plaintiff's conduct. If the activity is one that is inherently dangerous and from which the risks cannot be eliminated, then a finding of primary

assumption of [the] risk is appropriate.'" *White v. Elias*, 2012-Ohio-3814, 4 N.E.3d 391, ¶ 40 (8th Dist.), quoting *Crace v. Kent State Univ.*, 185 Ohio App.3d 534, 2009-Ohio-6898, 924 N.E.2d 906, ¶ 16 (10th Dist.).

{¶ 30} We are aware that, while primary assumption of risk has been applied mainly to recreational activities where "certain risks are so inherent in some activities that the risk of injury cannot be avoided," *Ellis v. Greater Cleveland R.T.A.*, 2014-Ohio-5549, 25 N.E.3d 503 (8th Dist.), the courts have extended the doctrine to certain nonrecreational activities. *Peterson v. Martyn*, 10th Dist. Franklin No. 17AP-39, 2018-Ohio-2905.[3] However, no courts in Ohio have applied primary assumption of risk to the activity of walking on an icy driveway and we decline to extend the doctrine to the circumstances of this case. Consequently, the trial court erred in granting summary judgment in favor of the defendant on the issue of duty by applying the doctrine of assumption of risk.

<u>Duty Owed by an Independent Contractor</u>

{¶ 31} "'Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff.'" *Wallace v. Ohio Dept. of*

---

[3] The Tenth District cites several activities that were recognized by the courts as within the scope of primary assumption of risk: climbing a ladder (*Foggin v. Fire Protection Specialists, Inc.*, 10th Dist. Franklin No. 12AP-1078, 2013-Ohio-5541); riding on a car's trunk lid (*Cave v. Burt*, 4th Dist. Ross No. 03CA2730, 2004-Ohio-3442); crossing the railroad tracks as a matter of convenience (*Miljkovic v. Greater Cleveland Regional Transit Auth.*, 8th Dist. Cuyahoga No. 77214, 2000 Ohio App. LEXIS 4780 (Oct. 12, 2000); and riding on a parade float (*Wagner v. Kretz*, 3d Dist. Allen No. 1-17-24, 2017-Ohio-8517).

*Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 23, quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989). "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser in cases of premises liability." *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287. "[T]he status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) defines the scope of the legal duty that the landowner owes the entrant." *Id.*

{¶ 32} Under the open-and-obvious doctrine, a premises owner owes no duty to persons entering the premises regarding dangers that are open and obvious. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. Underlying this doctrine is the rationale that the open-and-obvious nature of the hazard itself serves as a warning and the owner may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves. *Id.*, citing *Simmers* at 644. Moreover, the open-and-obvious doctrine relates to the threshold issue of duty. *Id.* at ¶ 13. When applicable, it obviates the duty to warn and act as a complete bar to any negligence claims. *Id.* at ¶ 5.

{¶ 33} It has been well recognized that "[t]he dangers from natural accumulations of ice and snow are ordinarily open and obvious." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph two of the syllabus. A premises owner owes no duty to remove natural accumulations of snow and ice or to warn of the dangers inherent to such accumulations because such dangers are considered to

be so open and obvious that an owner may reasonably expect an invitee to safeguard themselves against these dangers. *Lobas v. FC Midtown L.L.C.*, 8th Dist. Cuyahoga No. 102063, 2015-Ohio-2399, ¶ 7, citing *Sidle*.

{¶ 34} The instant case, however, concerns the liability of an independent contractor instead of a premises owner. Plaintiffs alleged that William, a resident of the premises, fell on an accumulation of ice caused by a downspout improperly installed by LeafGuard, an independent contractor. The open-and-obvious doctrine cannot be applied to shield an independent contractor from liability. As the Supreme Court of Ohio held, "[a]n independent contractor who creates a dangerous condition on real property is not relieved of liability under the doctrine which exonerates an owner or occupier of land from the duty to warn those entering the property concerning open and obvious dangers on the property." *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 1992-Ohio-42, 597 N.E.2d 504. Rather, "[u]nder Ohio law, an independent contractor who creates a dangerous condition on someone else's property is subject to the general laws of negligence." *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 8th Dist. Cuyahoga No. 105950, 2018-Ohio-1197, ¶ 23; *see also Miller v. Moyer*, 6th Dist. Sandusky No. S-16-033, 2017-Ohio-7106, ¶ 15.

{¶ 35} Under the general laws of negligence, "the existence of a duty depends upon the foreseeability of harm: if a reasonably prudent person would have anticipated that an injury was likely to result from a particular act, the court could find that the duty element of negligence is satisfied." *Wallace,* 96 Ohio St.3d 266,

2002-Ohio-4210, 773 N.E.2d 1018, at ¶ 23. "The minimum standard of care expected under any circumstances is to exercise that degree of care and caution that an ordinarily careful and prudent person would exercise under similar circumstances." *Cameron,* 2018-Ohio-979, 98 N.E.3d 305, at ¶ 52, quoting *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, 29 N.E.3d 921, ¶ 27. Specifically, "[a]n independent contractor owes a general duty of care towards a business invitee; that is, he must exercise that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances." *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 2005-Ohio-2098, 828 N.E.2d 683 (6th Dist.), ¶ 35. *See also Bakies v. RSM Maintenance, Inc.,* 3d Dist. Allen No. 1-19-03, 2019-Ohio-3323, ¶ 43*; Royce v. Yardmaster*, 11th Dist. Lake No. 2007-L-080, 2008-Ohio-1030, ¶ 21. Here, LeafGuard's duty depends on the foreseeability of the injury — whether a reasonably prudent person would have anticipated that an injury was likely to result from the installation of the downspout under the circumstances of this case.

{¶ 36} Furthermore, we note that "applying general negligence principles to an independent contractor did not completely render the open and obvious doctrine inapplicable." *Stevens v. Highland Cty. Bd. of Commrs.*, 4th Dist. Highland No. 04CA8, 2004-Ohio-4560, ¶ 42. "While the open and obvious doctrine does not relieve an independent contractor of a duty of care, the open and obvious nature of a hazard may be relevant for other purposes in connection with a negligence claim." *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 8th Dist. Cuyahoga No. 105950, 2018-

Ohio-1197, ¶ 26.  A plaintiff's failure to protect himself or herself from an obvious hazard may constitute comparative negligence, *Thayer* at ¶ 27; "[t]he open and obvious doctrine could apply to determine a plaintiff's comparative negligence." *Stevens* at ¶ 43.  Under R.C. 2315.33, Ohio's comparative negligence statute,

> the contributory fault of a person does not bar the person as plaintiff from recovering damages that have directly and proximately resulted from the tortious conduct of one or more other persons, if the contributory fault of the plaintiff was not greater than the combined tortious conduct of all other persons * * * .

Furthermore, "[i]ssues of comparative negligence are for the jury to resolve unless the evidence is so compelling that reasonable minds can reach but one conclusion." *Stevens* at ¶ 44, quoting *Simmers* at 646.  *See also Texler v. D.O. Summers Cleaners & Shirt Laundry Co.*, 81 Ohio St.3d 677, 681, 693 N.E.2d 271 (1998).

{¶ 37} Here, the undisputed evidence establishes that LeafGuard installed a downspout.  Zigmund and Melissa expressed their concerns that the downspout may allow water to drain onto the driveway and freeze in the winter, creating a hazardous condition.  The evidence also reflects that William was aware that the downspout would drain water directly onto the driveway, which could freeze and create a hazardous condition given the weather in Northeast Ohio.  Finally, there is also an issue of fact regarding whether the patch of ice William fell on was formed from the water drained by the downspout or ice that was formed on the driveway due to the snowstorm on the day of the incident.

{¶ 38} Because the trial court concluded that LeafGuard owed no duty under the doctrine of primary assumption of risk, it never determined the duty owed by

LeafGuard, including the issue of whether William's injury was foreseeable (i.e., whether a reasonably prudent person would have anticipated that an injury was likely to result from the installation of the downspout under the circumstances of this case). Should the trial court determine LeafGuard owed a duty, it should then determine whether there are questions remaining for determination by the jury as to whether LeafGuard breached its duty toward William, whether that breach was the proximate cause of William's injury, and whether William's comparative negligence, if any, bars his claim. Consequently, we remand the matter to the trial court for an analysis of plaintiffs' negligence claim consistent with this opinion. *Stevens* at ¶ 46. The three assignments of error are sustained to the extent that we agree with appellants' contention that primarily assumption of risk is not applicable in this case.

{¶ 39} Judgment reversed. Case remanded.

It is ordered that appellants recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN T. GALLAGHER, A.J., and
MARY EILEEN KILBANE, P.J., CONCUR